H. B. Smoot et al. v. W. Q. Richards, Guardian, et al.

No. 1297.

1. **Guardianship — Investment of Funds — Invalid Purchase of Land.** — Where a guardian, under order of court, undertook to invest funds of the wards in real estate, but obtained no order of approval or confirmation of the purchase, and the deed was made to the guardian alone, without stating it to be for the benefit of the wards, and the proceedings were otherwise irregular, the wards were entitled to repudiate the transaction and recover their money.

2. **Joinder of Parties.** — Money belonging to wards was in charge of S., who made a sale of land to their guardian for their use, and by agreement with the guardian appropriated the money in payment for the land. The wards sued S. for the money, and the attempted purchase of the land for their benefit was held invalid, because of failure by the guardian to comply with the statute. *Held*, that S. had the right to have the guardian, who had first given to him her own note for the land, to the payment of which note the money was applied, made a party to the suit, in order that the determination as to the right to the money should be binding on her.

Appeal from District Court of Mitchell County.

*R. H. Looney* and *Charles A. Jennings*, for appellants.—1. The court erred in rendering judgment for the plaintiff upon the conclusion of law as found, that there was no order of confirmation of the County Court of the investment by the guardian, Hattie A. Crisp, of the money of her wards in the lands in controversy, for the reasons: (1) that the court had ordered a sale of the bonds; (2) that said sale had been reported to the County Court; (3) that an investment in said lands had been ordered by the County Court; (4) that the said guardian reported said investment in her final account; (5) that said final account was approved by the County Court, and said guardian discharged. Rev. Stats., arts. 2560, 2564, 2688; Treadway v. Eastburn, 57 Texas, 211, 213; Robertson v. Johnson, 57 Texas, 62–66; Hardy v. Beaty, 84 Texas, 562, 566; Lyne v. Sanford, 82 Texas, 58, 64; Martin v. Robinson, 67 Texas, 368; Moody v. Butler, 63 Texas, 212; Neill v. Cody, 26 Texas, 289; Martin v. Burns, Walker & Co., 80 Texas, 678; Simmons v. Blanchard, 46 Texas, 270; Roberts v. Schultz, 45 Texas, 187; Vanfleet on Collateral Attack, secs. 3, 17, pp. 15, 23, 29; secs. 721, 790, 791, 825; Freem. on Judg., 4 ed., sec. 319b.

2. The court erred in sustaining the demurrers to the pleading of the defendants making Hattie A. and J. W. Crisp parties to the suit. Defendants show by their pleading that they in good faith sold the lands to Hattie A. Crisp, as guardian, for the use of her wards, and were assured by said guardian that she had in all respects complied with the law in getting the necessary orders from the Probate Court for the purchase of said lands, and if plaintiff should recover in this suit, for her failure to do so, she and her husband are necessary and proper parties, against whom defendants should have their remedy

over, and being already impleaded therein, and having answered, the court should not have dismissed them therefrom. Rev. Stats., art. 1209; Floyd v. Patterson, 72 Texas, 207; Watts v. Robson, 6 Texas, 206; Love v. Keowne, 58 Texas, 201; Birdwell v. Butler, 13 Texas, 338, 341; Williams v. Bradberry, 9 Texas, 487; Craddock v. Goodwin, 54 Texas, 582; Hawes on Parties, sec. 104.

*Smallwood & Smith,* for appellees.—1. A guardian of the estate of minors is expressly prohibited by the statutes from paying out any money of his ward on a contract of investment in real estate until such investment is fully inquired into by the court and approved, and if he does pay out his ward's money in violation of such prohibition of the statutes, same may be recovered back in a suit for that purpose, although all other requirements of the statutes necessary to the investment may have been fully complied with. Rev. Stats., art. 2563; Hurst v. Marshall, 75 Texas, 452; Harrison v. Ilgner, 74 Texas, 86; Neil v. Cody, 26 Texas, 286; Boisseau v. Boisseau, 79 Va., 74.

2. If it was the agreement, as consummated between appellants and Hattie A. and J. W. Crisp, that the purchase of the lands was made for the benefit of the minors, and the land was to be paid for out of the minors' funds, Hattie A. and J. W. Crisp are not personally bound by the contract, and therefore could not be brought into this suit by appellants, and were not liable to have any kind of a judgment in favor of appellants rendered against them. And the fact that Mrs. Crisp as guardian may have represented to appellants that she had in all respects complied with the law in getting the necessary orders from the County Court for the purchase of the lands, gives the appellants no right of action against her or J. W. Crisp for the purchase money, although such representation on the part of Mrs. Crisp was untrue. Holloway v. Blum, 60 Texas, 625; Burditt v. Glasscock, 25 Texas Supp., 45; Pool v. Sanford, 52 Texas, 621; 2 Willson's C. C., sec. 120.

But if the court should not agree with us that the answer of appellants showed a contract to sell the land to Mrs. Crisp as guardian, but showed a contract, the contract was fraudulent, contrary to law, and void, for the reason that it provided for the unlawful appropriation of the minors' funds to the payment of the purchase money. Such being true, the Crisps and appellants were joint wrongdoers, and appellants can have no right to indemnity from the Crisps in the event they, the appellants, are in this suit required to refund the money so unlawfully appropriated.

That the contract was illegal: Specht v. Collins, 81 Texas, 213; Wegner v. Biering, 65 Texas, 506; Read v. Smith, 60 Texas, 379; Bish. on Con., secs. 471, 627.

Intentional wrongdoers can not claim contribution: Railway v. James, 73 Texas, 12; 2 Willson's C. C., sec. 601; 1 Hill on Torts, 2; Cool. on Torts, *144.

HEAD, ASSOCIATE JUSTICE.—This suit was instituted by appellee, as guardian of the minors Marcus L., Una A., and Leila Richards, to recover of appellants the sum of $5904, and interest.

The facts out of which this claim arose will be found fully set forth in the findings of fact and law filed by the court below, as follows:

"1. At the April Term of the County Court of Scurry County, Texas, A. D. 1886, Hattie A. Crisp was appointed guardian of the estates of Marcus L. Richards, Una A. Richards, and Leila Richards, minors, and duly qualified as such guardian, and she continued as such guardian until the 28th day of March, 1892, when she resigned, and was discharged by said court.

"2 Plaintiff W. Q. Richards was duly appointed by said court as the guardian of said minors, on the resignation of the said Hattie A. Crisp, and duly qualified as such guardian on the 28th of March, 1892.

"3. There came into the hands of Hattie A. Crisp, as guardian of said minors, four United States bonds, of $1000 each.

"4. At the August Term, 1890, on the application of said Hattie A. Crisp, an order was made authorizing her to sell said four bonds and invest the proceeds in surveys number 337, 339, and 381, block 97, of the Houston & Texas Central Railroad Company, 'on the delivering of a warranty deed and titles clear of any cloud, as provided by law.'

"5. H. B. Smoot, acting for the First National Bank of Colorado, sold these four bonds for Mrs. Hattie A. Crisp for the sum of $5000.

"6. On the 27th of March, 1890, H. B. Smoot and W. J. Hatch, parties of the first part, and J. W. Crisp and Hattie A. Crisp, his wife, of the second part, entered into a written agreement, reciting that, whereas the parties of the first part have contracted to sell to the parties of the second part sections numbers 337, 339, and 381, in block 97, Houston & Texas Central Railroad Company survey, in Scurry County, each containing 640 acres of land, for the price of $3 per acre, that whenever the said parties of the first part shall make to the parties of the second part, or to such person or persons as the latter parties may direct, a deed of conveyance to the above described lands, with general warranty, then, upon the tender of such deed to the parties of the second part, the last named parties bind themselves to accept said conveyance, and to pay $3 per acre for said land, aggregating $5760. At the time that said instrument was executed, it was understood by all the parties that the purchase was made for the benefit of the minors, Marcus L., Una A., and Leila Richards. Crisp and wife executed a note, May 31, 1890, payable August 31, 1890, for $5904, amount of purchase money of said sections, with interest added to the latter date.

"7. The sum of $5000, the proceeds of the four United States bonds, was applied to the part payment of this note, and J. W. Crisp gave his note for the balance, which was finally paid by the plaintiff, W. Q. Richards, amounting to $964.

"8.  In February, 1892, Hattie A. Crisp presented to the County Court of Scurry County her resignation as guardian, together with her account of the condition of the estate, which account, among other things, states, 'and said guardian would further show that, pursuant to order of this court authorizing same, she invested funds, the proceeds of four United States 4 per cent bonds, $1000 each, to the amount of $5760, belonging to said minors, in 1920 acres of land, * * * consisting of sections 337, 339 and 381, in block 97, Houston & Texas Central Railway survey, of 640 acres each, at $3 per acre, as will more fully appear in report of said investment to be filed in said court.' No other report of said investment was ever filed.

"9.  At the March Term, 1892, of said court, an order was entered granting leave to said guardian to resign, and reciting:  'And it appearing to the court that said guardian has filed with said application (to resign) her final account, * * * showing the true condition of said guardianship, and accounting for all the estate belonging to said minors, * * * it is therefore ordered by the court, that said application be granted, * * * and that, upon compliance with this order, and the surrender of her letters of guardianship, she be permitted to resign her trust and be discharged.'

"10.  The defendants, Smoot and Hatch, had no notice that said minors had any other property than the four United States bonds.

"11.  The defendants, on the 5th of June, 1890, executed and mailed to Mrs. Hattie A. Crisp their deed, with general warranty, to the said three sections of land.

"12.  The said three sections were never patented by the State, but were located by virtue of valid certificates by the Houston & Texas Central Railroad Company, and defendants have all the right and title of said railway company to said three sections.

"From the foregoing conclusions of fact, there never having been made any further report of the investment of the four United States bonds, as indicated that there would be in Mrs. Hattie A. Crisp's report, and there never having been made any order confirming said investment, I hold that the order permitting Mrs. Crisp to resign her guardianship, and approving her account, is not a confirmation of the investment, and that consequently the plaintiff is entitled to recover of the defendants $5000, with legal interest, and that plaintiff is not entitled to recover the amount over $5000 paid for said land."

Appellants in their answer made J. W. Crisp and his wife, Hattie A. Crisp, parties herein, and sought a recovery over against them, in case they were held liable to appellee.  The court below sustained exceptions to this part of appellants' answer.

*Opinion.*—The provisions of our Revised Statutes, in so far as they are material to the decision of this case, are as follows:

"Article 2560.  When the guardian may think it best for his ward to have any surplus money on hand invested in real estate, he shall file

an application in writing in the court where the guardianship is pending, asking for an order of such court authorizing him to make such investment," etc.

"Article 2562. Upon the hearing of any such application at a regular term of the court, after notice thereof has been given as required, if the court be satisfied that such investment will be beneficial to the ward, an order authorizing the same to be made shall be entered upon the minutes, which order shall specify the investment to be made, and shall contain such other directions as the court may think it advisable to make.

"Article 2563. Where any contract has been made for the investment of money in real estate under order of the court, such contract shall be reported in writing to the court by the guardian at the next regular term of such court thereafter; and it shall be the duty of the court to inquire fully into the same, and if satisfied that such investment will benefit the estate of the ward, and that the title to such real estate is valid and unincumbered, the court may approve the contract and authorize the guardian to pay over the money in performance of the same; but no money shall be paid out by the guardian on any such contract until such contract has been approved by the court by an order to that effect entered upon the minutes of the court.

"Article 2564. When the money of the ward has been invested in real estate, the title to such real estate shall be made to such ward, and such real estate shall be inventoried, appraised, managed, and accounted for by the guardian as other real estate of the ward."

We are of opinion that the findings of the trial judge do not show a substantial compliance with these requirements of our statute. In the first place, we do not think the meager reference to this investment contained in the report of the guardian filed over a year after it seems to have been made and her wards' money appropriated thereon in violation of law, coupled with the statement that a fuller report would be thereafter made, and the very general order approving this account, can be taken in lieu of the particular report and order of approval required by article 2563. It does not seem to us that a fair construction of this final report and the order of the court approving it can lead to the conclusion that the County Court ever passed upon the title to this real estate and found it to be valid and unincumbered, and clearly no order was entered directing the payment of the wards' money therefor, as is emphatically required by the statute. Also, it appears from the findings of the lower court that no attempt was ever made to convey the title to this land to the wards, as is required by article 2564, the deed to Mrs. Crisp having been made previous even to the first order directing the investment, and in her name, without any allusion to the representative capacity in which it is claimed she was acting.

Under the circumstances, and inasmuch as appellants knew at the time they appropriated these funds that they belonged to appellee's

wards, we are of opinion the court below correctly held them liable therefor.   Hurst v. Marshall, 75 Texas, 452.

Appellee, in his cross-assignment, charges error in the failure of the court to allow him interest on the $5000 for which he was given judgment from the date of its appropriation by appellants, and also in the failure of the court to give him judgment for the $904 claimed to have been paid out of other funds of the minors than the United States bonds referred to in the findings of fact.

We see no reason why interest was not allowed upon the $5000; but no statement of facts accompanies the record, and no date is given in the findings of the court below at which the appropriation of this sum was made by appellants, and we are therefore unable to say that error was committed.    Also, it does not appear from the findings of the trial judge that the $904 was in fact paid out of the funds of appellee's wards, the statement being that it was paid by appellee; and we can not therefore affirm that error was committed in refusing judgment therefor.

Appellants also assign error to the action of the court in refusing to allow them to retain Hattie A. and J. W. Crisp as parties herein, and have their rights as against them adjudicated.

It will be observed that, in the trade with the Crisps, appellants took their note for the purchase price of the land conveyed to Mrs. Crisp, and appellee bases his right to recover herein upon the ground that the money used in the payment of this note did not belong to the makers thereof, but was the property of his wards.   If he is correct in this, it follows that, in so far as the makers thereof are concerned, that note has never been paid, but is still a subsisting lien upon the land for which it was given.

It is therefore of vital importance that the title to this money be adjudicated in a way to be binding upon all persons interested therein, which manifestly includes the Crisps as well as the other parties.   To hold otherwise would be to say that appellants shall be compelled to litigate with appellee the right to this money, and when defeated, the judgment rendered against them will be no evidence in their favor in their subsequent litigation with the makers of the note attempted to be discharged therewith.

We believe this should not be allowed, and that appellants should be regarded rather in the light of stakeholders of this fund, with the right to make parties all persons interested therein, for the purpose of having the title thereto effectually settled in one proceeding.

We would entertain no doubt as to the soundness of these conclusions, were it not for the views expressed by our Supreme Court in the case of Frey v. Railway, 86 Texas, 466, in refusing a writ of error in a case decided by us.  In that case the railroad was sued in trespass to try title by the owner of the land, and answered, admitting plaintiff's title, but asking the condemnation of a right of way over it, and that the makers of a bond of indemnity to it be made parties to the

proceeding. We thought, with the court below, and still think upon principle, that this should have been allowed, so as to make the judgment rendered therein conclusive as to the amount thereof, both as to the railroad and the makers of the bond; but the Supreme Court, though the question was not raised before them, to avoid misconstruction of their action in refusing the writ, expressed a different view.

A majority of this court think this case, however, distinguishable from that, in that much stress seems to have been laid upon the fact that one of the causes of action sought to be joined in that case sounded in tort (trespass to try title), while the other (upon the indemnity bond) was upon contract. The writer, however, inclines to think that the expression used in the opinion in that case, to the effect that the joinder would be "calculated to disturb the orderly course of procedure, to occasion delay, and accumulate costs which it might be difficult to properly adjust," manifests an intention on the part of that court to give these considerations controlling importance in deciding such questions, and for that reason would be disposed to affirm the action of the court below in denying the joinder in this case; but as he agrees with the majority upon principle, he does not dissent from the reversal ordered by them.

The judgment of the court below will be reversed, and the cause remanded.

*Reversed and remanded.*

Delivered September 26, 1894.