### H. B. SMOOT ET AL. v. W. Q. RICHARDS, GUARDIAN, ET AL.

Delivered January 2, 1897.

**Guardian—Contract of Purchase of Land Not Approved—Recovery of Purchase Price.**

Where land was purchased by a guardian without a previous order of court approving the contract of sale, as required by statute, she was held entitled to recover the amount paid therefor; and this although there was an order of court authorizing her to sell certain bonds and invest the proceeds in the land actually bought.

APPEAL from Mitchell. Tried below before Hon. WILLIAM KENNEDY.

*R. H. Looney* and *Charles A. Jennings,* for appellants.—Authorities cited in support of the validity of the sale: Rev. Stats. 1895, arts. 2641-2645, 2770; Ferguson v. Templeton, 32 S. W. Rep., 148; Templeton v. Ferguson, 33 S. W. Rep., 329; Crawford v. McDonald, 33 S. W. Rep., 325; Brown v. Christie, 27 Texas, 73; Treadway v. Eastburn, 57 Texas, 209; Martin v. Burns, 80 Texas, 678; Murchison v. White, 54 Texas, 78; Hardy v. Beatty, 84 Texas, 562; Lyne v. Sanford, 82 Texas, 58; Simmons v. Blanchard, 46 Texas, 270; Roberts v. Schultz, 45 Texas, 187; Vanfleet on Coll. Att., secs. 3, 17, 790, 791, 721, 825; Freeman on Judg., 4 ed., sec. 319b.

*Smallwood & Smith,* for appellee.—A guardian of the estate of a minor is expressly prohibited by the statutes from paying out any money of his ward on a contract of investment in real estate until such investment is fully inquired into by the court and approved; and if he does pay out his ward's money in violation of such statutory prohibition, it may be recovered back in a suit for that purpose, although all other requirements of the statutes necessary to the investment may have been fully complied with. Sayles' Civ. Stats., arts. 2563, 2564; Hurst v. Marshall, 75 Texas, 452; Harrison v. Ilgner, 74 Texas, 86; Neil v. Cody, 26 Texas, 286; Boisseau v. Boisseau, 79 Va., 74; Smoot v. Richards, 27 S. W. Rep., 967.

HUNTER, ASSOCIATE JUSTICE.—This suit was instituted by the appellee, W. Q. Richards, as guardian of Marcus L., Una A., and Lelia Richards, to recover from H. B. Smoot and W. J. Hatch the sum of $5904, money received by them from the present guardian and from Hattie A. Crisp, a former guardian of said minors, upon the ground that the guardians had misappropriated the funds belonging to the estates of said wards in purchasing lands therewith as an investment from appellants to said amount, without an order of the probate court of Scurry County, where the guardianship was pending, confirming and approving such investment, and ordering the money paid.

The facts are, as we conclude from a mass of evidence, that the guardian held four United States bonds of $1000 each, and upon application of the former guardian to the probate court she was permitted and directed by the orders of said court to sell them, and to invest the proceeds in three certain sections of land lying in Scurry County, the numbers of which sections were given in the order, but the price to be paid was not named, the order providing that warranty deeds should be delivered to her for said lands, and the titles thereof "to be clear of any cloud, as provided by law."

Acting upon these orders, the bonds were sold and the proceeds paid to appellants for the lands named, at the rate of $3 per acre, and a warranty deed dated June 5, 1890, was made to Hattie A. Crisp, who was then guardian of said minors, by appellants, conveying said lands to her. In January, 1892, Mrs. Hattie Crisp presented her resignation of said guardianship to the probate court of Scurry County, and accompanying it her final account, showing the condition of the estates of said wards, and asking for final settlement and to be discharged, and in which she refers to the above investment as follows: "And said guardian would further show that, pursuant to an order of this court authorizing the same, she invested funds, the proceeds of four United States 4 per cent bonds, $1000 each, to the amount of $5760, belonging to said minors, in 1920 acres of land situate near Snyder, Scurry County, consisting of sections 337, 339, 381, in block 97, Houston & Texas Central Railway survey of 640 acres each, at $3 per acre; as will more fully appear in report of said investment to be filed in said court."

Notice of this resignation and of final settlement was duly published, and on the 9th day of March, 1892, the probate court entered the following order: "On this day came on to be heard by the court the application of Hattie A. Crisp, guardian of the persons and estate of said minors, for leave to resign her guardianship, and it appearing to the court that said guardian has filed with said application her final account, verified by her affidavit, showing the true condition of said guardianship, and accounting for all the estate belonging to said minors, and it further appearing to the court that the notice of the filing of said application and account has been given in the manner required by law, it is therefore ordered by the court that said application be granted, and that said Hattie A. Crisp, guardian as aforesaid, deliver the persons and estate of

said minors, Marcus L., Una A., and Lelia Richards, to W. Q. Richards, who is this day duly appointed guardian of the persons and estate of said minors, and that upon compliance with this order and the surrender of her letters of guardianship she be permitted to resign her trust and be discharged."

Article 2563, Revised Statutes of 1879, provides that where a contract has been made by a guardian for the investment of money in real estate under order of the court, such contract shall be reported in writing to the court by the guardian, "and it shall be the duty of the court to inquire fully into the same, and if satisfied that such investment will benefit the estate of the ward, and that the title to such real estate is valid and unincumbered, the court may approve the contract and authorize the guardian to pay over the money in performance of the same; but no money shall be paid out by the guardian on any such contract until such contract has been approved by the court by an order to that effect entered upon the minutes of the court."

It appears in this case that no order of the court was ever made "approving the contract," and consequently the guardian had no right or authority to pay the money over on such contract, and of this want of authority in the guardian the appellants must be held to have known, as the statute is plain in providing that nothing short of an order approving the contract and ordering the guardian to pay the money is sufficient to authorize such act, and this order must be made and entered on the minutes of the court. See Smoot v. Richards, 27 S. W. Rep., 967.

Persons dealing with guardians in relation to the estate of the ward must take care that the law is being fully complied with; otherwise they get no title to the ward's property, and run the risk of losing their own.

We are of opinion that the judgment in this case ought to be affirmed.

*Affirmed.*

### ON MOTION FOR ADDITIONAL CONCLUSIONS, AND FOR REHEARING.

HUNTER, ASSOCIATE JUSTICE.—We are requested by the motion for additional conclusions of fact to find that the proceeds of the sale of the bonds were not paid to appellants or either of them, but were paid to the First National Bank of Colorado. We find that appellant Smoot sold the bonds in New York City, knowing that the purpose for which he was selling them was to apply the proceeds to the payment of the note which Hattie Crisp and husband had executed to him and Hatch for the land, and which was then either due to them or upon which they were then liable as indorsers to the bank, and that Smoot applied the proceeds to the payment of that note by placing the same in the New York bank to the credit of the First National Bank of Colorado, and directing the amount to be credited on the $5904 note, and that Hatch placed the credit on the note, as he wrote Crisp, September 17, 1890, in Smoot's name, and that both Smoot and Hatch participated in, and were bene-

ficiaries of, the misappropriation of said funds by the guardian, and are liable therefor. It may be that the First National Bank of Colorado is also, but if it is that does not take away the appellants' liability for their part in the transaction.

We further find that both Smoot and Hatch, as well as the First National Bank of Colorado, all knew and had notice that the purpose in making the sale of the bonds was to apply the proceeds to the payment of the $5904 note, and they aided and assisted in effecting the sale and in the misappropriation of the money to such purpose, and this is what we meant in our original opinion when we said that "the proceeds were paid to appellants for the land named." If Smoot had placed the money to his own credit in New York, and knowing the unauthorized use which the guardian was about to make of it in paying it on this $5904 note, and drew a draft in favor of the First National Bank for it, in order to pay the note on which he was liable as indorser, it certainly could not be contended that he would not be liable. If, on the other hand, he placed the money to the credit of the First National Bank for the purpose of paying the note, and directed it to draw for it and credit the note with the amount, what is the difference? We can see none that would affect his liability.

In view of these conclusions, we overrule the second assignment of error, which complains of the peremptory charge of the court to find for the plaintiff, because no other verdict could have been permitted to stand.

We grant the motion requesting us to find additional conclusions of fact, and find the additional facts above set out, adding our views thereon; and we overrule the motion for a rehearing.

*Rehearing denied.*

Writ of error refused.