# COMMERCIAL NATIONAL BANK *v.* WEINHARD.

## SAME *v.* WILLIAMS.

ERROR TO THE SUPREME COURT OF THE STATE OF OREGON.

Nos. 109, 110.   Argued December 17, 1903.—Decided January 18, 1904.

Section 5205, Rev. Stat., is intended to, and does, confer upon a national banking association the privilege of declining to make the assessment to make good a deficiency in the capital after notice by the Comptroller of the Currency so to do and to elect instead to wind up the bank under § 5220. The shareholders and not the directors have the right to decide which course shall be pursued and an assessment made upon the shares by the directors without action by stockholders is void.

THESE actions were brought in the Circuit Court of the State of Oregon for Multnomah County upon separate demands to recover the value of stock severally held by Weinhard and Williams in the Commercial National Bank of Portland, Oregon; Williams owning sixty shares of the par value of $6000, and Weinhard one hundred shares of the par value of $10,000. By stipulation the cases were heard together in the Circuit Court; a jury being waived and a trial had to the court. The cases were considered together as one appeal in the Supreme Court of Oregon, which affirmed the judgment of the lower court, 41 Oregon, 359, assessing the value of the stock and giving

judgment in favor of the plaintiffs, now defendants in error. The same facts and questions are involved in the cases and they will be considered together. The one question arises from a motion on the part of the bank for nonsuit, on the ground that the plaintiffs below had introduced no testimony, as a part of the case in chief, tending to show the value of the stock for which a recovery was sought. As appears in the record much testimony was taken, and the Oregon Supreme Court regarding the stock as of some value, at least, it was held that if there was any error in overruling the motion for nonsuit, it was cured by the subsequent action in submitting testimony as to the value of the stock. In any event this feature of the case does not present a Federal question, and upon writ of error from the judgment of a state court we are to consider in the first instance only the Federal questions involved. If those were correctly decided the judgment must be affirmed. *Murdock* v. *City of Memphis*, 20 Wall. 590. The plaintiffs below recovered judgment for the value of the stock upon the theory that there had been a conversion thereof, because the board of directors and the stockholders directed the assessment resulting in the sale of the stock of the plaintiffs below in satisfaction thereof.

The Commercial National Bank of Portland was duly organized under the National Banking Act, and carried on business in the city of Portland, Oregon. It appeared that the capital of the bank had become impaired, and thereupon such proceedings were had that on December 5, 1896, the Comptroller issued the following notice to the bank:

"Treasury Department,
"Office of Comptroller of the Currency,
"Washington, D. C., Dec. 5, 1896.

"Whereas, it appears to the satisfaction of the Comptroller of the Currency that the capital stock of the Commercial National Bank, Portland, Oregon, has become impaired to an extent which makes necessary an assessment of two hundred

and fifty thousand dollars ($250,000) upon the shareholders of said association to make good such deficiency:

"Now, therefore, notice is hereby given to said association, under the provisions of section 5205 of the Revised Statutes of the United States, to pay the said deficiency in its capital stock by assessment upon its shareholders, *pro rata,* for the amount of the capital stock held by each, and if such deficiency shall not be paid, and said bank shall refuse to go into liquidation, as provided by law, for three months after this notice shall have been received by it, a receiver will be appointed to close up the business of the association, according to the provisions of section 5234 of the Revised Statutes of the United States.

"In testimony whereof, I have hereunto subscribed my name and caused my seal of office to be affixed to these presents, at the Treasury Department, in the city of Washington, and District of Columbia, this 5th day of December, A. D. 1896.

"JAMES H. ECKLES,

"*Comptroller of the Currency.*

"To the Commercial National Bank, Portland, Oregon."

After receipt of this notice, upon December 12, 1896, the board of directors passed this resolution:

"*Resolved,* That in accordance with the notice served upon this association by the Comptroller of the Currency, under date of December 5, 1896, and received by this bank on the 11th day of December, 1896, an assessment is hereby levied upon the shareholders of this bank of fifty per cent or $50 per share, payable at this bank on or before March 11, 1897.

"*And, resolved,* That the cashier of this bank be, and he hereby is, authorized and instructed to serve upon each shareholder of the bank a legal notice of the above assessment by sending such notice to each shareholder's address by registered mail."

Upon December 17, 1896, notice of this assessment was served upon each of the stockholders of the bank. The defendants in error having failed to pay this assessment, on

March 18, 1897, the board of directors passed a resolution directing the sale of the delinquents' stock to be made at public auction on May 5, 1897. In pursuance of this order, and on the day named, the stock was sold for the amount of the assessment. The Federal question is whether the board of directors in thus assessing and selling the stock of the defendants in error exceeded their powers under the National Banking Act; it being claimed that a valid assessment could only be made by the action of the stockholders, and that the sale by the directors upon this assessment was unlawful and amounted to a conversion of the stock.

*Mr. E. S. Pillsbury* for plaintiff in error.

*Mr. Thomas O'Day*, with whom *Mr. George H. Williams* and *Mr. George W. Durham* were on the brief, for defendants in error.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

This case requires the construction of section 5205 of the Revised Statutes of the United States as amended: 3 Comp. Stat. 3495. The section is as follows:

"Every association which shall have failed to pay up its capital stock, as required by law, and every association whose capital stock shall have become impaired by losses or otherwise, shall, within three months after receiving notice thereof from the Comptroller of the Currency, pay the deficiency in the capital stock, by assessment upon the shareholders *pro rata* for the amount of capital stock held by each; and the Treasurer of the United States shall withhold the interest upon all bonds held by him in trust for any such association, upon notification from the Comptroller of the Currency, until otherwise notified by him. If any such association shall fail to pay up its capital stock, and shall refuse to go into liquidation, as

provided by law, for three months after receiving notice from the Comptroller, a receiver may be appointed to close up the business of the association, according to the provisions of section fifty-two hundred and thirty-four. And provided, That if any shareholder or shareholders of such bank shall neglect or refuse, after three months' notice, to pay the assessment, as provided in this section, it shall be the duty of the board of directors to cause a sufficient amount of the capital stock of such shareholder or shareholders to be sold at public auction (after thirty days' notice shall be given by posting such notice of sale in the office of the bank, and by publishing such notice in a newspaper of the city or town in which the bank is located, or in a newspaper published nearest thereto,) to make good the deficiency, and the balance, if any, shall be returned to such delinquent shareholder or shareholders."

The assessment in this case was made by the board of directors without any action of the stockholders of the association, and the defendants in error having failed to pay the same upon notice, their stock was sold as directed in the statute. It is claimed that an assessment by the directors without action of the stockholders was without authority of law and amounted to a conversion of the stock. This view was sustained in the Supreme Court of Oregon. The assessment ordered by the Comptroller was for the purpose of restoring the capital of the bank, and thus enabling it to continue its business. Ample power is conferred upon the Comptroller for this purpose. His action is in aid of other sections of the law preventing a withdrawal of the capital, or the making of dividends when losses have been sustained equal to the undivided profits. Sections 5202–5204, Rev. Stat. When the notice is received from the Comptroller by the bank under section 5205, the association has no authority to review or gainsay the necessity thereof. That question is concluded by the action of the Comptroller. The money to be raised for the continuance of the business may or may not be used in the liquidation of debts. The assessment is entirely different from that pro-

vided for in section 5151, calling upon the individual responsi-
bility of shareholders for the payment of debts.   Under the
last named section the stockholder is required to pay such
assessments as may be made, to meet the outstanding obliga-
tions of the bank, within the limit of an amount equal to the
par value of the stock in addition to the amount invested
therein.   He has no election of payment, but is required to
meet this liability, created by law for the benefit of creditors.
Under section 5205 the amount paid is subject to the control
of the board of directors in the continued operations of the
bank.   If the stockholders are to have a voice in making or
declining to make the assessment, they may well hesitate to
entrust more capital to the control of a board under whose
management it has already been impaired.   Certain powers
are conferred by law upon the directors.

Section 5136 provides that the association shall have power—

"*Sixth.* To prescribe, by its board of directors, by-laws not
inconsistent with law, regulating the manner in which its stock
shall be transferred, its directors elected or appointed, its
officers appointed, its property transferred, its general business
conducted, and the privileges granted to it by law exercised
and enjoyed.

"*Seventh.* To exercise by its board of directors, or duly au-
thorized officers or agents, subject to law, all such incidental
powers as shall be necessary to carry on the business of bank-
ing; by discounting and negotiating promissory notes, drafts,
bills of exchange, and other evidences of debt; by receiving
deposits; by buying and selling exchange, coin, and bullion;
by loaning money on personal security; and by obtaining,
issuing, and circulating notes according to the provisions of
this Title."

And, again, by section 5145, it is declared that the "affairs"
of the corporation "shall be managed by not less than five
directors."

Thus the directors are given authority to transact the usual
and ordinary business of national banks.   Obviously, the

power conferred may be exercised in all usual transactions through the executive officers of the bank without consultation with the stockholders. In the present case the question to be dealt with is vital to the continuance of the life of the association, as only by complying with the requirement of the Comptroller in assessing a sum sufficient to make up the impaired capital of the bank can its business be continued. The shareholders by their contracts of subscription have agreed to pay in the amount of capital stock subscribed and to discharge the additional liability imposed by the statute. They have not contracted to meet assessments at the will of the directors to perpetuate the business of a possibly losing concern. It would be going far beyond the usual powers conferred upon directors to permit them to thus control the corporation. Corporate powers conferred upon a board of directors usually refer to the ordinary business transactions of the corporation. *Railway Company* v. *Allerton*, 18 Wall. 233. The assessment is required by the Comptroller, not by the directors. The association is to receive notice thereof, and action must be taken by the association to meet the requirements of the Comptroller under the statute. It is provided that if the association fail to pay up its capital stock, and refuse to go into liquidation, as provided by law, for three months after receiving notice from the Comptroller, a receiver may be appointed to close up the business of the association according to the provisions of section 5234. This important provision is entitled to much weight in determining the proper construction of the statute. The assessment may be avoided, and the amount required is not payable if the association decides to go into liquidation. Provision for voluntary liquidation is made in section 5220 wherein authority is given to liquidate upon a vote of shareholders owning two-thirds of the stock. Such liquidation does not prevent the assessment of stockholders under section 5151 for the benefit of creditors and the enforcement of the liability of the shareholders in an action by a receiver or directly by the creditors. Comp. Stat.

sec. 5234; sec. 2, Act of June 30, 1876, as amended, 3 Comp. Stat. 3509. The section referred to, 5234, directs the appointment of a receiver to take possession of the books, records and assets of the association, to collect the debts and claims belonging to it, and, among other things, if necessary to pay the debts of the association, to enforce the individual liability of the shareholders.

We are of opinion that section 5205 is intended to and does confer upon the association the privilege of declining to make the assessment to make good the deficiency to the capital, and to elect instead to wind up the business of the bank under section 5220, which provides for voluntary liquidation by a vote of two-thirds of the shareholders. The question is, who shall exercise this privilege and determine the future of the association—is it the directors or the shareholders who have this right of decision? The origin and continuation of the association would seem to be matters in which the owners and not the managers of the bank are primarily interested. If these are privileges of the shareholders and only exercisable by them, this case presents a total lack of the exertion of the power by those upon whom it is legally conferred, as no action of the shareholders was had in the present case in making the assessment. Action upon the Comptroller's order involves extraordinary action of the association, and determines its future operations or liquidation, and is not found within the powers conferred upon the directors for the management of the business of the bank. If this were not so, then the decision of a question of such vital importance is left to the directors, who may or may not be large holders of stock. As it is a matter foreign to the powers of such boards and not conferred by statute or required for the transaction of the business of the bank, we think it was intended to be vested in the shareholders. Whether a given power is to be exercised by the directors or the shareholders depends upon its nature and the terms of the enabling act. In certain instances the law specifically requires the action of the association to be taken by its

incorporators or shareholders. Sections 5133, 5134, 5136, 5143, Rev. Stat. These sections regulate matters not pertaining to the ordinary business of the bank entrusted to the directors. They deal with the exercise of those powers which concern the organization of the corporation, the amount of its capital stock and kindred matters.

In section 5205 the requirement of the Comptroller is that the association make the assessment. It is the "association" which is required to pay up the stock or go into liquidation. The payment of the assessments must come from the shareholders, and we are of the opinion that the statute contemplates action upon the alternatives presented in the statute by the association composed of its shareholders. It is true, as suggested by the learned counsel for the plaintiff in error, that it requires a two-thirds vote of the stockholders to put the bank into liquidation under section 5220; but if the assessment is not carried, and the shareholders have not a two-thirds vote favoring liquidation, the bank is put in liquidation, and the shareholders' liability is the statutory one for the benefit of creditors, and not a venture of more capital in the enterprise with a possible stockholders' liability upon the liquidation of the bank if it shall ultimately fail. Again, if the determination of this matter is entirely left to the directors, they may, by declining to make the assessment, force a liquidation of the bank, although the shareholders—the real owners of the property—be willing to make good the impaired capital and continue the business. On the other hand, if the directors may assess to make good impaired capital, the shareholder must pay the assessment or submit to the sale of his stock. Such extraordinary powers are far beyond those required in the management of the bank's affairs or conferred in the sections of the law defining those conferred upon the directors. In *Delano* v. *Butler*, 118 U. S. 634, 653, while the question was not directly involved, in speaking of assessments under the act, Mr. Justice Matthews, delivering the opinion of the court, said:

"The assessment imposed upon the stockholders by their own vote, for the purpose of restoring their lost capital, as a consideration for the privilege·of continuing business, and to avoid liquidation under ·§ 5205 of the Revised Statutes, is not the assessment contemplated by § 5151, by which the shareholders of every national banking association may be compelled to discharge their individual responsibility for the contracts, debts and engagements of the association.  The assessment as made under § 5205 is voluntary, made by the stockholders themselves, paid into the general funds of the bank as a further investment in the capital stock, and disposed of by its officers in the ordinary course of its business.  It may or may not be applied by them to the payment of creditors, and in the ordinary course of business, certainly would not be applied, as in cases of liquidation, to the payment of creditors ratably; whereas, under § 5151, the individual liability does not arise, except in case of liquidation and for the purpose of winding up the affairs of the bank.  The assessment under that section is made by authority of the Comptroller of the Currency, is not voluntary, and can be applied only to the satisfaction of the creditors equally and ratably."

We concur in this reasoning.  The assessment under section 5202 provides for a sum to continue the operations of the bank and if unpaid subjects the stock of the shareholders to sale to make good the deficiency in its collection.  Shareholders are given the right to go into liquidation, subjecting themselves, it is true, to the liability of the assessment for the benefit of creditors under section 5151 to an amount equal to the par value of their stock, if needed to make good the indebtedness of the bank, but risking no further investment of new captial in the continued business of the bank.  The choice of methods is with the shareholders, and to them is addressed the decision of·the question and the making of the assessment if that course is determined upon.  *Hulitt* v. *Bell*, 85 Fed. Rep. 98.  In the present case the assessment was made by the directors without action by the shareholders, and, not being

within the statute, was void. It follows that the Supreme Court of Oregon properly affirmed the judgment of the lower court in which the value of the stock sold was recovered.

*Judgment affirmed.*