BROWN et al. v. MIDLAND NAT. BANK.*
(No. 1665.)

(Court of Civil Appeals of Texas. El Paso. Dec. 18, 1924. Rehearing Denied Jan. 15, 1925.)

1. Guardian and ward ⚫══53—Investment of ward's money in bank stock held unlawful diversion, giving rise to immediate right of action in ward to recover.

Guardian's investment of ward's money in bank stock *held* unlawful diversion and misappropriation thereof, which, when done with knowledge of bank officers, gives rise to immediate right of action in ward to recover.

2. Limitation of actions ⚫══174(2) — Minor ward's action to recover money diverted by guardian held not barred by running of statute against guardian.

Rule, that when right of action in trustee holding legal title becomes barred by limitation, right of cestui que trust is also barred, does not apply to right of action in favor of minor ward to recover money wrongfully diverted and misappropriated by guardian's purchase of bank stock, to which money ward has both legal and equitable title.

3. Guardian and ward ⚫══118—Minor ward not required to wait until majority before suing for money wrongfully diverted by guardian.

A minor, whose guardian has diverted and wrongfully appropriated funds by investing them in bank stock, is not required to wait until he attains his majority before suing, under Rev. St. art. 4124, by such guardian, to recover money so diverted.

4. Banks and banking ⚫══248(1) — Guardian and ward ⚫══53—Ward not liable for assessments on bank stock unlawfully purchased by guardian, and may recover assessments paid.

Where bank stock has been unlawfully purchased by guardian with ward's money, under National Banking Act (Rev. St. U. S. § 5152 [U. S. Comp. St. § 9690]), ward is not liable for assessments against such stock, and may recover assessments paid by guardian.

5. Banks and banking ⚫══248(2) — Certificate of Comptroller that bank stock impaired a stated percentage held conclusive of that fact.

Certificate of Comptroller of Currency that capital of bank had been impaired 100 per cent. is conclusive of that fact in stockholder's action to enjoin sale of stock to pay assessment.

6. Banks and banking ⚫══241—Sale of stock to pay assessment necessary for restoration of impaired capital held authorized, though stockholder not liable for assessment in excess of 100 per cent.

Under National Banking Act (Rev. St. U. S. § 5205, as amended by Act June 30, 1876 [U. S. Comp. St. § 9767]), sale of bank stock to pay assessment necessary to restore impaired capital and losses cannot be enjoined, nor does fact that a contingent deposit has been made to guarantee such restoration affect stockholder's liability, though stockholder is not liable for assessments in excess of 100 per cent., nor required to take care of losses in addition to losses of entire capital.

Appeal from District Court, Midland County; Chas. Gibbs, Judge.

Actions by Z. T. Brown and Annie Mae Klapproth against the Midland National Bank, consolidated and tried together. From the judgment rendered, plaintiffs appeal. Affirmed in part, and reversed and remanded in part.

John B. Howard, of El Paso, and Chas. L. Klapproth, of Midland, for appellants.

O. W. Fannin, of Midland, and J. M. Wagstaff, of Abilene, for appellee.

HIGGINS, J. Annie Mae Klapproth, the owner of 13 shares of the capital stock of the Midland National Bank, which is incorporated under the laws of the United States with a capital of $75,000, brought this suit against said bank to restrain the sale of said stock which had been advertised for sale by the bank because of her failure to pay a 100 per cent. assessment upon her stock ordered by the stockholders of the bank for the purpose of restoring its capital stock which had been impaired by losses theretofore sustained.

Z. T. Brown, guardian of the estate of the minor, Joseph T. Brown, also brought a suit in the same court against said Midland National Bank, his petition being in two counts. In the first count it was alleged by the guardian, in substance, that on October 15, 1907,

---

he was appointed guardian of the estate of the minor, Joseph Brown, and that he is the qualified and acting guardian of the estate of said minor which was still being administered in the probate court of Midland county; that on or about April 15, 1913, he purchased from the Midland National Bank 16 shares of its capital stock of the par value of $100 each, and certificate of stock therefor was issued to him, he paying therefor the sum of $2,400 which was paid for with the minor's money; that the stock was issued to him as guardian of said minor; that such sale to him as guardian was without authority of law, illegal and void; that the officers of the bank at the time knew that the stock was paid for with funds belonging to the said minor, and knew it was illegal to invest the funds of a minor in such stock, wherefore he tendered back said shares of stock, and asked judgment for the recovery of said $2,400 paid therefor, with interest, from the date of purchase "for which amount he here and now sues in behalf, for the use and benefit, of his ward, and the minor, Joe Brown."

The second count of his petition is in substance the same as that of Annie Mae Klapproth. Scattered throughout the guardian's petition are allegations to the effect that in July, 1922, he paid to the bank $560 of the funds of the minor in satisfaction of a 35 per cent. voluntary assessment theretofore made by the stockholders of the bank to restore the impaired capital thereof. To that part of the guardian's petition wherein he sued for said sum of $2,400, with interest, the defendant interposed a special exception to the effect that the petition upon its face disclosed that it was barred by the 2 and 4 year statutes of limitation.

Upon trial the cases were consolidated. The special exception referred to was sustained. Upon the hearing upon the other issues the court rendered judgment in favor of the defendant, and the plaintiffs appeal.

A condensed statement of the facts found by the court is as follows: The guardian is the legally qualified and acting guardian of the minor, Joe Brown, and is the owner of 16 shares of stock of the Midland National Bank, of the par value of $100 each, which was issued to Z. T. Brown, guardian, on April 15, 1913. The said guardian has been the owner of said stock since the date of its issuance, and it was paid for out of the funds of his ward, the sum of $2,400 being paid therefor. Annie Mae Klapproth is the owner of 13 shares of the capital stock of said bank, which she has owned for a number of years preceding the filing of this suit. In July, 1922, the capital of the Midland National Bank had become impaired, and the stockholders ordered an assessment of 35 per cent. of the stock to restore the impaired capital, which was paid by all stockholders, the guardian paying $593.60, and Annie Mae

Klapproth paying $455 to cover such assessment. At that time the bank was a going concern; the assessment was voluntary on the part of the stockholders and was paid into the bank for the purpose of restoring its impaired capital. On February 14, 1923, the bank was still a going concern and upon said date the national banking authorities, upon making an examination, found that its capital stock was impaired, and it had sustained heavy losses. Whereupon, on said date, and upon the advice of the bank examiner, its directors closed the bank, and it remained closed in charge of the examiner until March 27, 1923. During the intervening time the bank officers and the examiner made an effort to determine the amount of its losses, and the stockholders were making an effort to reopen the bank. The bank officers and the examiner in charge estimated the bank's losses at $150,000 and the bank was notified by the Comptroller that, before the bank could be reopened, arrangements must be made to take care of its losses, and to restore its capital.

In the meantime, shareholders of the bank had entered into negotiations with one Henry James and others to furnish money to take care of the losses and reopen the bank. Thereupon Henry James and his associates placed in the Midland National Bank the sum of $150,000, in a special escrow account, to secure the losses of the bank, and to enable it to reopen. Each of the stockholders were to be assessed 100 per cent. upon their stock to assist in restoring the losses of the bank, and, when paid, the money thus received was to be applied to the liquidation and payment of the escrow account. $75,000 of the escrow account was to be used to restore the capital, and the balance to restore the additional losses. The escrow deposit was made for the purpose of guaranteeing the restoration of the capital of the bank, and the additional $75,000 of losses in case all of the stockholders did not pay their assessment and the additional 100 per cent. This escrow deposit was kept separate in the bank, and was not to be otherwise used. Those shareholders who paid in 100 per cent. of the assessment and 100 per cent. of the capital stock were given temporary certificates to that effect. The arrangement was approved by the Comptroller of the Currency and the examiner in charge of the bank. This arrangement having been made on March 27, 1923, the bank was reopened for business with the permission of the Comptroller, on March 29, 1923, and, for the purpose of carrying out the agreement under which the bank was permitted to reopen, the Comptroller issued his certificate to the effect that its capital stock had been impaired 100 per cent., and notified the bank to order an assessment of 100 per cent. on its shareholders, or else go into liquidation. The $150,000 at that time had

been placed in the bank in escrow to guarantee that the 100 per cent. assessment would be paid, and that an additional 100 per cent. would be paid in for the purpose of restoring the capital stock of the bank.

On April 17, 1923, a meeting by the directors of the bank was held, and the certificate of the Comptroller aforesaid was submitted to the board, and upon motion a stockholder's meeting was called for the purpose of determining whether or not the assessment should be made. Notice of this meeting was given all the stockholders, and on April 28, 1923, the stockholders' meeting was held, and a resolution adopted that the impaired capital be restored by an assessment of 100 per cent. of the stockholders upon stock held by them. Thereafter, all stockholders paid this assessment, except the plaintiffs in this consolidated suit, and one Fambrough, the latter of whom surrendered his stock to the bank to avoid a sale. The plaintiffs in this consolidated suit having failed to pay their assessment, the same was duly advertised for sale. It is this sale which the plaintiff Annie Mae Klapproth, and the plaintiff Z. T. Brown, guardian, by the second count in his petition, seek to enjoin.

[1] We will first dispose of that phase of the appeal which complains of the court's ruling that the cause of action set up in the first count of the guardian's petition is barred by limitation, and his action in sustaining the special exception to that effect. The petition upon its face shows that the legal and equitable title to the money which was invested by the guardian on April 15, 1913, in stock of the Midland National Bank, was in the minor. Article 3235. 'The investment by the guardian of this money in the stock was an unlawful diversion and misappropriation of the minor's money, to which, under the allegations of the petition, the bank was a party, and a right of action to recover the money back immediately arose in favor of the ward. Smoot v. Richards, 8 Tex. Civ. App. 146, 27 S. W. 967; Bank v. Hill (Tex. Civ. App.) 141 S. W. 301; Bank v. Jones, 18 Tex. 812; Bank v. Claxton, 97 Tex. 569, 80 S. W. 604, 65 L. R. A. 820, 104 Am. St. Rep. 885.

[2] In support of the court's action, appellee invokes the ruling made in Collins v. McCarty, 68 Tex. 150, 3 S. W. 730, 2 Am. St. Rep. 475; McAdams v. McAdams, 10 Tex. Civ. App. 653, 32 S. W. 87, and other cases of like nature wherein it is held that whenever a trustee is vested with the legal title and is competent to sue, and his cause of action becomes barred by limitation, the right of the cestui que trust is also barred. But this rule has no application when the legal title is vested in a cestui que trust who labors under the disability of minority. In such case the statute of limitation does not run against

him, though it may have run against the trustee. Weiss v. Goodhue, 98 Tex. 274, 83 S. W. 178; Belt v. Cetti, 100 Tex. 92, 93 S. W. 1000; Smith v. Price (Tex. Civ. App.) 230 S. W. 836; Collins v. McCarty, 68 Tex. 150, 3 S. W. 730, 2 Am. St. Rep. 475.

It is true, as contended by the appellee, the legal title to the stock became vested in the guardian, because it was issued to him in his name, and if the guardian was suing the bank to recover the stock, or for its conversion or anything of that kind, the rule in the cases relied upon by the appellee would be applicable. But that is not the nature of the guardian's suit in the first count. It is an action to recover back from the bank money of the minor which had been unlawfully diverted and misappropriated. The legal and equitable title to this money was vested in the minor, and, under the authorities last cited, the right of the minor to recover it back is not barred even if his guardian is.

The ruling in the case of Weiss v. Goodhue and others, supra, is applicable here because this suit is to recover back money the title to which was vested in the minor. Under those authorities his right of action is not affected by the failure of the guardian to sue within the prescribed period. We think clearly, that a right of action immediately vested in the minor upon the diversion and misappropriation of his money, and the statute of limitation has not affected his right to sue upon the same.

[3] This brings us to the next question, viz.: Must the minor wait until he reaches his majority before he can assert the right of action thus vested in him, and if not, how can he assert it and protect his rights? There is no sound reason why a minor should ever be required to wait until he reaches his majority before he can assert and prosecute a right of action vested in him, and which should be asserted and prosecuted for the protection of his estate.

In the case of a minor without a guardian he can do so by next friend. But, in the case of a minor with a legally appointed, qualified, and acting guardian of his estate, there is no other proper person through whom he can act in the enforcement of rights of action against third persons, except in cases where the guardian is adversely interested, and perhaps where some other exceptional conditions obtain which prevent the guardian from suing. That his right of action must be prosecuted by the guardian of his estate follows from article 4124, R. S., which provides:

"The guardian of the estate is entitled to the possession and management of all property belonging to the ward, to collect all debts, rents, or claims due such ward, to enforce all obligations in his favor, to bring and defend suits by or against him."

[4] Now, in the present action, Z. T. Brown is the legally appointed, qualified, and acting guardian of the estate of the minor, Joe Brown. The minor has a right of action against the Midland National Bank, which the minor has the right to prosecute. The guardian sues herein "in behalf, and for the use and benefit of his ward and the minor, Joe Brown" to recover back the money belonging to the minor which was unlawfully paid to the bank. In what other way or by whom can the suit be brought? There is no other way to prosecute the suit, nor any other person to bring it. Of necessity the minor through his guardian may thus prosecute his right of action. If not, the minor is without a remedy until he reaches his majority. To so hold would be both absurd and unjust, and is not sound. For the reason indicated the exception to the first count of the petition was in our opinion, improperly sustained.

The next question relates to the right to recover back the money paid to the bank upon the assessment made in July, 1922. As to this no question of limitation is presented. Appellee relies upon that provision of the National Bank Act, section 5152, U. S. R. S. (U. S. Comp. St. § 9690), which reads:

"Persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name."

Also, upon the Kentucky case of Clark v. Ogilvie, 111 Ky. 181, 63 S. W. 429. In the case cited it appears that the minors inherited the stock from their father. That is a very different question from what is here presented. That case presented no question of an unlawful investment of the minor's estate in the stock. It is not necessary for us to determine whether a minor's money may be used to pay an assessment upon bank stock which has been lawfully acquired by the minor by inheritance, bequest, gift or otherwise. The investment of Joe Brown's money in stock of the Midland National Bank is not authorized by the law of this state. Such investment was unlawful, and a misappropriation of the minor's funds. So the question is: Can a legal liability against the minor's estate to pay the assessment arise out of and be based upon this original unlawful investment and misappropriation? This must be answered in the negative, for we do not think it can be said that an illegal and unlawful diversion of a minor's estate can be made the basis of a lawful charge against the remainder of his estate. We therefore think the money paid the bank in July, 1922, may be recovered back.

This ruling with respect to the right to recover back the money from the bank necessarily eliminates the second alternative count in the guardian's petition, for he has no interest in what the bank does with the stock, if he is permitted to surrender it and recover back the money paid therefor. However, it is necessary to dispose of the same right of action asserted in the petition of Annie Mae Klapproth. Section 5205, amended by Act June 30, 1876, c. 156 (U. S. Comp. St. § 9767), relating to national banks, reads:

"Every association which shall have failed to pay up its capital stock, as required by law, and every association whose capital stock shall have become impaired by losses or otherwise, shall, within three months after receiving notice thereof from the Comptroller of the Currency, pay the deficiency in the capital stock, by assessment upon the shareholders pro rata for the amount of capital stock held by each; and the treasurer of the United States shall withhold the interest upon all bonds held by him in trust for any such association, upon notification from the Comptroller of the Currency, until otherwise notified by him. If any such association shall fail to pay up its capital stock, and shall refuse to go into liquidation, as provided by law, for three months, after receiving notice from the Comptroller, a receiver may be appointed to close up the business of the association according to the provisions of section 5234. And provided, that if any shareholder or shareholders of such bank shall neglect or refuse, after three months' notice, to pay the assessment, as provided in this section, it shall be the duty of the board of directors to cause a sufficient amount of the capital stock of such shareholder or shareholders to be sold at public auction (after thirty days' notice shall be given by posting such notice of sale in the office of the bank, and by publishing such notice in a newspaper of the city or town in which the bank is located, or in a newspaper published nearest thereto), to make good the deficiency, and the balance, if any, shall be returned to such delinquent shareholder or shareholders."

[5] This section of the National Banking Act is conclusive of the correctness of the court's action in refusing to restrain the sale of the Klapproth stock. In the first place the certificate of the Comptroller dated March 27, 1923, that the capital of the bank had been impaired 100 per cent., was conclusive of that fact. Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168; Aldrich v. Campbell, 97 F. 663, 38 C. C. A. 347.

[6] In addition thereto, the evidence in this case shows that the capital of the bank had become thus impaired. Under these circumstances it was incumbent upon the shareholders of the bank to restore this impaired capital or else be liquidated as provided in that section of the law, and Annie Mae Klapproth having failed to pay the assessment made against her stock by the stockholders, it was the duty of the board of

directors to cause a sufficient amount of her stock to be sold to pay the same. Commercial National Bank v. Weinhard, 192 U. S. 243, 24 S. Ct. 253, 48 L. Ed. 425.

This right and duty to sell the stock was not affected by the deposit by Henry James and his associates of the escrow fund, $75,-000 of which was to guarantee the restoration of the impaired capital. This money has not been absolutely and unconditionally paid to the bank for the purpose of restoring its capital, but is deposited there conditionally and as a guaranty that it would be restored in the manner prescribed by law. That portion of the capital of the bank represented by the shares owned by Annie Mae Klapproth not having been unconditionally restored, the stock may be sold for the purpose of absolutely and unconditionally restoring the same.

It is argued by the appellant that the proceedings in this case amount virtually to an assessment of 200 per cent., whereas she can only be lawfully assessed for 100 per cent. It is true she can be lawfully assessed for only 100 per cent. That is a legal charge against her stock; she has not paid it; and we fail to see how she can complain unless she at least offers to pay that which is legally chargeable against her stock. The stockholders of the Midland National Bank must not only restore their capital stock in full, but they must also make good the additional loss of $75,000 which the bank has sustained. No stockholder can be compelled to pay the 100 per cent. to take care of losses in addition to the loss of the entire capital of the bank. That must be voluntary on his part. But if he does not pay that which is legally assessable against his stock to restore the lost capital, then the stock can be sold to raise funds for that purpose.

As between Annie Mae Klapproth and the Midland National Bank, the judgment of the court below is affirmed.

As between Z. T. Brown, guardian, and the Midland National Bank, the judgment is reversed and the cause remanded for retrial of his right, in behalf of his ward, to recover back the money of his ward which has been unlawfully paid to the bank.

Affirmed in part; reversed and remanded in part.

### On Rehearing.

Upon the suggestion of appellee that our opinion does not clearly indicate the scope of the judgment of this court, we desire to say that the judgment of the lower court is in all respects affirmed except as to the issue of the guardian's right in behalf of his ward to recover back the money of his ward held to have been unlawfully paid to the appellee. The retrial will be confined to this issue alone.