### INTERSTATE NATIONAL BANK v. W. N. CLAXTON.

No. 1317. Decided May 16, 1904.

**1.—Banking—Deposit by Factor—Insolvency.**

A bank, knowing that a factor depositing in his own name, the usual course of his business, money received from sales of live stock belonging to his customers, was insolvent, became liable to his principal for such funds which, with the depositor's consent, it appropriated to payment of his own debt to the bank; but, though having the means of knowing that he was thereby misappropriating money belonging to his customers, it did not become liable to them for honoring the checks of the factor in favor of third persons. (Pp. 573-578.)

**2.—Same.**

The mere insolvency of a factor, that is, inability to pay his debts at maturity, where he does not surrender or the law assume control of his affairs, does not revoke his authority to deposit and check against the funds from sale of his customers' property; the bank could not question his right to do so, as long as the customers continued to employ and trust him with their sales; nor did it become liable to them for honoring his checks unless it was a party or privy to his breach of trust. (P. 575.)

**3.—Cases Distinguished.**

Bank v. Jones, 18 Texas, 811, and numerous cases elsewhere, distinguished. Coleman v. Bank, 94 Texas, 607, followed. (Pp. 574-578.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Potter County.

The bank sued Claxton on a note and the latter defended on plea of the bank's misappropriation of his funds on deposit by his factor. From a judgment sustaining this defense, plaintiff appealed and, on its affirmance, obtained writ of error.

*Browning, Madden & Truelove,* for plaintiff in error.—By receiving such checks as for deposit on the general account of Tamblin & Tamblin, plaintiff became bound to pay out the amount thereof on checks drawn by them against such account, and it can not be held to account to defendant for a part thereof on allegations that it so received and paid out such funds in the absence of allegations and proof showing that such depositors had no right so to handle such funds and that plaintiff was put on notice thereof prior to paying the checks drawn by such depositors. Duncan v. Magette, 25 Texas, 249; Baker v. Kennedy, 53 Texas, 205; Coleman v. Bank, 94 Texas, 606; Zane on Banks and Banking, sec. 128, p. 201, and sec. 130, p. 204.

To show a right in defendant to hold plaintiff liable to him for loss by reason of Tamblin & Tamblin, as his agents, factors or commission merchants, having sold his cattle and deposited the proceeds, with other funds, in plaintiff's bank, to their own credit as upon general account, and checked the same out, he should have alleged that they, by so doing, were violating the trust imposed in them by him, and that plaintiff had notice or knowledge thereof; and an allegation that plaintiff might have so known by making an investigation is not sufficient. Coleman v. Bank, 94 Texas, 606; National Bank v. Life Ins. Co., 104 U. S., 54; Zane on Banking, 218, sec. 136.

The charge is erroneous, in that it directs a verdict for defendant upon a finding that funds belonging to others than defendant were deposited in plaintiff bank and paid out to others without the consent of defendant, and without requiring the jury to find that defendant had followed and by evidence identified funds belonging to him and showing that the same had been diverted from their proper channels under circumstances amounting to a conversion; and that plaintiff by its conduct had become a party thereto. Merchants Nat. Bank v. Phillips & Wiggs Machinery Co., 15 Texas Civ. App., 158; Commercial Bank v. Jones, 18 Texas 811; 1 Morse on Banks, 317.

Said charge is erroneous, in that it directs a verdict for defendant upon a finding that plaintiff could have learned by reasonable inquiry that defendant owned or was entitled to a part of the deposit in plaintiff bank, when the law is that, as to funds deposited with it by Tamblin & Tamblin to their credit, as upon general account, they appearing and claiming to be owners at the time of the deposit, the bank becomes thereby the owners of the funds so deposited and a debtor to Tamblin & Tamblin to the amount thereof, so that it was bound to honor their checks until such time as any real owner thereof might appear and assert ownership of the funds deposited and demand the payment of such sum to him. Duncan v. Magette, 25 Texas, 249; Baker v. Kennedy, 53 Texas, 205; Commercial Bank v. Jones, 18 Texas, 820; Farmers Bank v. King, 57 Pa. St., 202; Zane on Banking, 213, sec. 134; 3 Am. and Eng. Enc. of Law, 826.

Even though plaintiff had known of defendant's alleged interest in the deposit made on the 28th day of October, 1901, and of Tamblin &

Tamblin's relation of factor or agent for defendant, to have rendered plaintiff liable to defendant on account of its paying the same out on checks drawn by Tamblin & Tamblin, as had been customarily done theretofore, plaintiff must have known that the funds being so paid out were defendant's and that Tamblin & Tamblin were violating the trust imposed in them by defendant so that the paying of such checks would probably cause defendant to lose his money. Coleman v. Bank, 94 Texas, 606, 608; Commercial Bank v. Jones, 18 Texas, 820-823; Nat. Bank v. Life Insurance Co., 104 U. S., 54; Farmers Bank v. King, 57 Pa. St., 202; 98 Am. Dec., 219; Zane on Banks and Banking, sec. 136, p. 218; 3 Am. and Eng. Enc. of Law, subjects "Banks and Banking," subhead "Deposits," page 833, note "Concerning Deposit of Trust Funds in Bank," citing authorities.

If the deposit in question was a trust fund in the hands of Tamblin & Tamblin and they deposited the same in plaintiff bank to be checked out by them, subject to their checks, and did so check on said funds, and plaintiff paid such checks before defendant asserted his rights thereto and before plaintiff had any notice or knowledge of Claxton's interest and that such trust fund was being diverted so as to cause him to lose the same, plaintiff is not liable to him on account thereof; and the court erred in refusing special charge number 4 to that effect. 3 Am. and Eng Enc. of Law, subject "Banks and Banking," III, subhead "Deposits," pp. 831, 832.

*Turner & Boyce,* for defendant in error.—If, at the time of the appointment of the trustee in bankruptcy for Tamblin & Tamblin, the check, in which was included the price of Claxton's cattle, had remained in the hands of Tamblin & Tamblin, or if the deposit in plaintiff bank, of which said check formed a part, had remained in the bank, the defendant Claxton would have been entitled to have the proceeds of his cattle paid to him out of the check, or bank account, in the hands of the trustee in bankruptcy. Van Alen v. Bank, 52 N. Y., 1; City of Lincoln v. Morrison, 90 N. W. Rep., 905, 57 Law. Rep. Ann., 885; In re Woods & Malone, 121 Fed. Rep., 599; 27 Am. and Eng. Enc. of Law, pp. 250-262; 11 Id., p. 160. This proposition is so well settled by all the authorities that we do not deem further comment on it necessary.

Tamblin & Tamblin's general authority as factors to receive the proceeds of sale of cattle and deposit them in their own name and check them out was terminated by operation of law when they became bankrupt, and this revocation took place upon the commission of the act of bankruptcy. 1 Am. and Eng. Enc. of Law, p. 1227; 12 Id., p. 705; Mechem on Agency, sec, 267; Ewell's Evans on Agency, pp. 92 and 401; Audenreid v. Betteley, 8 Allen (Mass.), 302; Hudson v. Granger, 5 Barn. & Ald., 27; Ex parte Snowball, L. R., 7 Ch., 548. An ordinary agent has no authority to deposit funds belonging to his principal to his own credit, and by so doing he is guilty of conversion. Mechem on

Agency, 529; 1 Am. and Eng. Enc. of Law, p. 1090; Bank v. Jones, 18 Texas, 820.

One who knowingly participates in misapplication of a trust fund is liable to the beneficiary, and in order to create such liability it is not necessary that such person should receive any benefit from the misapplication. 27 Am. and Eng. Enc. of Law, p. 264; Duckett v. Nat. Bank, 39 Law. Rep. Ann., 84; Leake v. Watson, 8 Law. Rep. Ann., 666.

Applying these principles to the case at bar we assert that when plaintiff bank received the deposit, on October 28th, which contained the proceeds of defendant's cattle, and passed them to the credit of Tamblin & Tamblin's private account, knowing that Tamblin & Tamblin was insolvent and had committed an act of bankruptcy and that the funds deposited did not belong to Tamblin & Tamblin, and thereafter permitted Tamblin & Tamblin to check them out in favor of other persons, knowing or having good reason to believe that they were not being paid to the equitable owner, it participated in Tamblin & Tamblin's wrongful conversion of plaintiff's funds and is liable therefor. Union Stock Yards Nat. Bank v. Moore, 79 Fed. Rep., 705; Union Stock Yards Nat. Bank v. Gillespie, 34 U. S. (Lawyer's Ed.), 724; Davis v. Panhandle Nat. Bank, 29 S. W. Rep., 926; Bank v. Jones, 18 Texas, 826; Central Nat. Bank v. Conn. Mutual Life Ins. Co., 26 U. S. (Lawyer's Ed.), 693.

The bank, knowing that Tamblin & Tamblin were insolvent and knowing that the funds tendered for deposit were proceeds of sale of live stock consigned to them for sale, was chargeable by law with notice of lack of authority on the part of Tamblin & Tamblin to deposit the funds to their own credit and check them out, and by allowing Tamblin & Tamblin to so deposit and check them out was liable irrespective of participation in the funds or of notice of the subsequent misapplication by Tamblin & Tamblin. Bank v. Jones, 18 Texas, 820; Bates v. First Nat. Bank, 89 N. Y., 286; Brown v. Daugherty, 120 Fed. Rep., 526; Kerr v. People's Bank, 158 Pa., 305; Honig v. Pacific Bank, 73 Cal., 464; Swift v. Williams, 11 Atl. Rep., 835; Duckett v. Bank, 39 Law. Rep. Ann., 84.

WILLIAMS, Associate Justice.—Plaintiff in error brought this suit to recover of defendant in error upon his note executed to Tamblin & Tamblin and assigned by them to plaintiff. The defendant's liability upon the note is not disputed, but he claims that plaintiff is liable to him for certain moneys of his which were deposited with it by Tamblin & Tamblin and partly applied by plaintiff to their indebtedness to it, and partly drawn out by them and appropriated to their own purposes. This contention is based on the following facts: Tamblin & Tamblin were live stock commission merchants in Kansas City and plaintiff was engaged in the banking business in the same place. The business of Tamblin & Tamblin consisted chiefly in selling live stock consigned to them as factors, the amount done by them on their own account being inconsiderable. They kept an account with plaintiff, their de-

posits consisting almost wholly of the proceeds of property thus sold for others, including their charges, which were deposited and checked out in their own name. As factors they were so employed by defendant, who resides in Texas, in selling his stock shipped them from time to time, the proceeds of which, as of sales for others, were deposited and drawn out as stated, and this course of business had been followed for a long time before the transaction out of which the present controversy arose. Plaintiff also allowed Tamblin & Tamblin to overdraw their account, taking security for their indebtedness, and large balances stood against them from time to time. On the 28th of October, 1901, plaintiff learned that Tamblin & Tamblin had sold and not accounted to it for a large number of cattle covered by one of its mortgages, so impairing its security that it demanded and received a note for $30,000 with a mortgage on other property to secure it. The evidence warrants the conclusion that at that time Tamblin & Tamblin were to plaintiff's knowledge insolvent, all of their property being incumbered to secure amounts due to plaintiff, and the giving of this mortgage was an act of bankruptcy on account of which, at the suit of the creditors, Tamblin & Tamblin, were on the 29th of November, 1901, adjudged bankrupts. On said 28th of October, 1901, they had for sale some cattle belonging to defendant and other people which they sold for $4529.65, of which $1604.40 were the gross proceeds of defendant's property. Payment was made by the check of the purchaser for the whole amount, payable to Tamblin & Tamblin, which check had on its face the notice "good only in payment for live stock and when drawn in favor of a Kansas City live stock commission office." This check and others were deposited with plaintiff by Tamblin & Tamblin and were credited to them upon their account late in the day after the transaction of the mortgage before stated had taken place. Defendant was present when his cattle were sold, received $50 from his factors, and instructed them, out of the net proceeds, to pay off the note here sued on, of the assignment of which to the bank he was ignorant, and to remit the balance to him. Instead of doing this, Tamblin & Tamblin on the 28th, 29th and 30th of October, drew checks, as they had been accustomed to do, in favor of third parties against this deposit, by which the larger part of it was exhausted. The bank, on the 30th, applied $160.94 to the payment of an indebtedness of Tamblin & Tamblin's to it and subsequently paid over the remainder of the fund to the referee in bankruptcy. On the 30th day of October, 1901, the plaintiff refused to receive and credit further deposits to Tamblin & Tamblin, individually, but formed what is termed a "trust fund" to which moneys tendered by them were credited, and thereafter a number of deposits were made by them into that fund for defendant, which were paid to him and are not in question. By the judgments of the District Court and the Court of Civil Appeals the bank was held liable to defendant not only for the amount applied to the indebtedness of Tamblin & Tamblin to it, but also on account of the payment of their checks in favor of persons other than defendant. For

reasons appearing in the course of this opinion we think the judgment is correct as to the first. item, but not as to the second. The reasons urged for the last named liability may be stated thus:

Tamblin & Tamblin were insolvent at the time of the deposit and this was or ought to have been known to the. bank; they had committed an act of bankruptcy of which the bank had knowledge, and upon which their bankruptcy was afterwards adjudicated; this revoked any authority they previously had as factors to deposit in their own names money of their customers; the bank had the means of knowing when it received the deposit that the moneys so deposited belonged to others than the depositors, and when it paid their checks that they were misapplying the funds, and could have learned by proper care who were the owners of such fund. From these facts the conclusion was deduced that the bank became liable (1) by permitting Tamblin & Tamblin to deposit in their own names without authority of its owner the money of another, and (2) in paying their checks in favor of others than such owner when it had ˙the means of knowing that by such checks they were applying the funds to their own use. If it were true that the deposit was made by the factors in their own names without authority and that the bank knew that the money belonged to others and that such a deposit was wrongful, a different question would arise from that upon which we think the decision depends.

The opinion of Judge Wheeler in the case of Bank v. Jones, 18 Texas, 811, is relied on to support the position that such a transaction would amount to a conversion participated in by the bank. But in that case the money with the knowledge of . the bank was placed in the hands of an agent for the sole purpose of being deposited to the credit of the principal. Upon this point the opinion says: "It can not be doubted that Dye had authority to deposit this money in bank on account of the plaintiffs; if not conferred in express terms, at least impliedly from the nature of the transaction. It was intended that it should be so deposited. That was the purpose for which it was consigned to Dye. He was but the instrument of the plaintiffs used by them for the purpose of employing in their behalf the agency of the bank. There was a privity between the bank and the plaintiffs, and the bank became directly and immediately responsible to the plaintiffs and not merely to the agent employed by the plaintiffs in making the deposit. Being so responsible, there can be no clearer proposition than that they had no right to pass the deposit to the private account of Dye. Whenever they did so they were guilty of a fraudulent conversion," etc. In that case the bank applied the money to its claim against Dye and it was upon that ground that the liability was at last rested, for, on page 824, the opinion further says: "If not before, there clearly was such a conversion when the defendant permitted him to appropriate it to the payment of his indebtedness, and the balancing of his account with the bank." We make these quotations not for the purpose of questioning the soundness of anything that was said in the case referred to, but only to

show that the views there expressed do not conflict with other authorities upon which we shall base our decision.

The present case is not one in which the deposit was made to the credit of the agents without authority. Their general authority as factors, as well as their long course of dealing with plaintiff and with the bank, plainly support the conclusion that such deposits were rightfully made. Upon this the bank had the right to rely in receiving the money. That such authority had existed is not questioned, but it is claimed that it was revoked by operation of law upon the facts which had arisen before the deposit in question was made. Authorities are cited to the effect that insolvency of a principal or agent operates a dissolution of the relation and, in case of the agent, revokes his authority. Mechem on Agency, secs. 263 to 267; Ewell's Evans on Agency, pp. 92, 401; Audenried v. Betteley, 8 Allen, 302; Hudson v. Granger, 5 Barn. & Ald., 27; Ex parte Snowball, L. R. 7 Ch., 548; 1 Am. and Eng. Enc. of Law, 1227; Story on Agency, secs. 482, 486. Of this Mechem says: "Mere insolvency or inability of the principal to pay his debts when due would not have this effect. It only results from the operation of the law when, either voluntarily or involuntarily, the principal surrenders and the law assumes control of his affairs." The cases cited in these various authorities as enforcing the doctrine relied on have been examined, and in all of them the bankruptcy or insolvency referred to was of the character stated by this author. In none of them did any question like that before us arise, all of them involving questions as to rights or titles arising between assignees in bankruptcy or insolvency and others. The proposition that the agency of Tamblin & Tamblin had ceased, or that its character had changed when this deposit was made, does violence to the facts then existing. The business of their customers was still in their charge, cattle were being sold and money handled uninterruptedly as always before. The defendant himself still employed and trusted them, and they were engaged in the active transaction of his business committed to their charge. There is no law, that we know of, which would forbid their employers from so employing them because they were financially embarrassed, or even insolvent, in the sense that they had not assets with which to discharge their liabilities. To say that the bank could not treat with them as still possessing the authority upon which they had always dealt, is to ignore the fact that the principal himself so recognized and dealt with them. The bank could neither terminate the agency nor limit its scope. The law might do so to a large extent by seizing the estate of the agent, but it had not moved at the time the rights of these parties, inter sese, became fixed. The act of bankruptcy presented itself to the parties as a fact which might or might not be taken advantage of. Bankruptcy declared upon it might affect rights of the bank as between it and those representing the bankrupt estate, but not those of these parties fixed as between themselves before any adjudication. If it be true, as urged, that if this money had remained in the bank and been

paid to the assignee in bankruptcy the defendant would have had the right to reclaim it, that does not affect this case. It might be conceded that if there had been no bankruptcy and the money still remained in the bank, defendant could recover it, but that would not establish his right to recover it after it has been paid away on checks regularly drawn. We therefore hold that the deposit made by Tamblin & Tamblin was within their authority and that they thereby became depositors; and the further questions must depend upon the rules of the law regulating the relation existing between banks and such customers.

The principles governing are clearly stated in the opinion of the Chief Justice in the case of Coleman v. Bank, 94 Texas, 607, 608, with copious citations from leading authorities. From these authorities it is clear that a depositor, although holding money in a fiduciary capacity, may draw it out of the bank ad libitum. The bank is bound to honor his checks and incurs no liability in so doing as long as it does not participate in any misapplication of funds or breach of trust. The mere payment of the money to, or upon the checks of, the depositor does not constitute a participation in an actual or intended misappropriation by the fiduciary, although his conduct or course of dealing may bring to the notice of the bank circumstances which would enable it to know that he is violating his trust. Such circumstances do not impose upon the bank the duty or give it the right to institute an inquiry into the conduct of its customer in order to protect those for whom it may hold the fund, but between whom and the bank there is no privity. This is clearly brought out in the leading case of Gray v Johnson, L. R. 3 Eng. & Ir. App. Cas., 1, in which an executrix, by a check signed by her, as such, in favor of a mercantile firm of which she was a member, drew out of a bank a fund belonging to the estate. In the opinion of Lord Chancellor Cairns the law is thus stated: "On the one hand, it would be a most serious matter if bankers were to be allowed, on light and trifling grounds—on grounds of mere suspicion or curiosity—to refuse to honor a cheque drawn by their customer, even although that customer might happen to be an administrator or an executor. On the other hand, it would be equally of serious moment if bankers were to be allowed to shelter themselves under that title, and to say that they were at liberty to become parties or privies to a breach of trust committed with regard to trust property, and, looking to their position as bankers merely, to insist that they were entitled to pay away money which constituted a part of trust property at a time when they knew it was going to be misapplied, and for the purpose of its being so misapplied. I think, fortunately, your lordships will find that the law on that point is clearly laid down, and may be derived without any hesitation from the authorities which have been cited in the argument at your lordships' bar, and I apprehend that you will agree with me when I say that the result of those authorities is clearly this: in order to hold a banker justified in refusing to pay a demand of his customer, the customer being an executor and drawing a cheque as

an executor, there must, in the first place, be some misapplication, some breach of trust, intended by the executor, and there must in the second place, as was said by Sir John Leach in the well known case of Keane v. Roberts, (1) be proof that the bankers are privy to the intent to make this misapplication of the trust funds. And to that I think I may safely add, that if it be shown that any personal benefit to the bankers themselves is designed or stipulated for, that circumstance, above all others, will most readily establish the fact that the bankers are in privity with the breach of trust which is about to be committed." In the only other opinion, by Lord Westbury, this statement of principle occurs: "The relation between banker and customer is somewhat peculiar, and it is most important that the rules which regulate it should be well known and carefully observed. A banker is bound to honor an order of his customer with respect to the money belonging to that customer which is in the hands of the banker; and it is impossible for the banker to set up a jus tertii against the order of the customer, or to refuse to honor his draft on any other ground than some sufficient one resulting from an act of the customer himself. Supposing, therefore, that the banker becomes incidentally aware that the customer, being in a fiduciary or a representative capacity, meditates a breach of trust and draws a cheque for that purpose, the banker, not being interested in the transaction, has no right to refuse the payment of the cheque, for if he did so he would be making himself a party to an inquiry as between his customer and third persons. He would be setting up a supposed jus tertii as a reason why he should not perform his own distinct obligation to his customer. But then it has been very well settled that if an executor or a trustee who is indebted to a banker, or to another person having the legal custody of the assets of a trust estate, applies a portion of them in the payment of his own debt to the individual having that custody, the individual receiving the debt has at once not only abundant proof of the breach of trust, but participates in it for his own personal benefit." The law is stated to the same effect in Morse on Banks and Banking, and he cites many cases the opinions in which sustain him. Secs. 317 and cases cited.

This case is to be distinguished from those in which a bank undertakes to acquire title to, an interest in, or benefit from a fund held in trust by a depositor. In attempting to acquire such a right or benefit the bank becomes a party to the action of the trustee and stands as any other person dealing with one holding property in a fiduciary capacity. The question of notice of the title of the person holding the property and his power over it arises, and a bank can not any more than any other person acquire that which belongs in equity to another, if it have notice of his rights; and if it thus aid a trustee in diverting trust property from the beneficiary, it becomes liable as a wrongdoer.

Other cases to be distinguished are those in which a principal is the depositor and occupies a contractual relation to the bank, but an agent

is given authority to draw his checks against the deposit for the benefit of the principal or of his business. In such cases the bank is not authorized to pay checks drawn by the agent for his own benefit if it knows, or, it is sometimes said, if it have good reason to know the fact. It is mainly from expressions in opinions discussing these two classes of cases that the courts below reached the conclusion that it was the duty of the bank to avail itself of the means it had of knowing of the misappropriation of defendant's money by his agents. Wolfe v. State, 79 Ala., 206; Gerard v. McCormick, 130 N. Y., 266; Bank v. Jaudin, 82 U. S. (Law Ed.), 145; Bank v. Insurance Co., 104 U. S. 54; Bank v. Gillespie, 137 U. S. (Law Ed.), 724; Duckett v. Bank, 39 Law. Rep. Ann., 84; Bank v. Moore, 79 Fed. Rep., 705; Bank v. Manufacturing Co., 33 S. E. Rep., 755.

In other cases cited money was deposited to the credit of one person and drawn out by another without authority, and in still others the original deposits were held to have been wrongfully entered in the name of one who was not the owner of and not authorized to so deposit the fund. This case is distinguishable from all of those by the fact that the deposit was rightfully entered in the name of Tamblin & Tamblin, from which arose the power in them which the bank was bound to recognize, of drawing it out by their personal checks. The principles laid down clearly make the bank liable for the sum applied to the debt of Tamblin & Tamblin. As to the sums paid out on checks, the most that is claimed is that the facts brought to the attention of the bank furnished it with the means of knowing that the money in question belonged to defendant and that, in checking it out, his agents were misappropriating it. That, as we have seen, is not enough to make the bank liable further than stated. The judgment will therefore be reversed and judgment will be here rendered for plaintiff for the amount of the note less a credit of $160.94 applied as of date October 30, 1901, and for all costs of suit.

*Reversed and rendered.*