## FIRST STATE BANK OF BONHAM v. HILL.

(Court of Civil Appeals of Texas. Texarkana. Nov. 16, 1911.)

1. BANKS AND BANKING (§ 130*)—RELATION TO DEPOSITOR—DEPOSIT BY TRUSTEE OR AGENT.

A depositor, though holding money in a fiduciary capacity, may draw it from the bank at his will, and the bank incurs no liability to the beneficiary by merely honoring the check presented.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 320; Dec. Dig. § 130.*]

2. BANKS AND BANKING (§ 130*)—RELATION TO DEPOSITOR—DEPOSIT BY TRUSTEE OR AGENT.

Where a bank has notice that funds deposited are trust funds, it cannot assist the trustee to divert such funds or acquire an interest in or a benefit therefrom.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 320; Dec. Dig. § 130.*]

3. BANKS AND BANKING (§ 130*)—RELATION TO DEPOSITOR—TRUST FUNDS—MISAPPROPRIATION BY DEPOSITOR—LIABILITY OF BANK.

Though an agent commits a breach of trust in depositing funds in his own name and using such funds, where the bank had no knowledge that any one other than the depositor had an interest in such proceedings, the fact that it charged against such deposits the amount of an overdraft of such depositor and interest thereon with his consent is not such a participation with him in the breach of trust as will render the bank liable in conversion for such amounts.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 320; Dec. Dig. § 130.*]

4. APPEAL AND ERROR (§ 1008*)—REVIEW—TRIAL BY COURT—CONCLUSIVENESS OF FINDINGS.

The determination of a trial court without a jury as to what facts are established by the evidence is conclusive on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3955–3969; Dec. Dig. § 1008.*]

Appeal from Fannin County Court; H. A. Cunningham, Judge.

Action by D. V. Hill against the First State Bank of Bonham. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

On July 15, 1910, and for about two months prior thereto, J. A. Freeman, who was located in Bonham, had an account with and conducted his business with appellant bank. He was engaged in the commission and brokerage business. On July 15, 1910, Freeman drew a draft for $88.55 on a party in Midland, with bill of lading attached, for

a car of hay sold, and delivered it to the bank for collection. The bank, upon the delivery of the draft, gave Freeman's account credit for the amount, and entered same on his passbook. Appellee had no interest in this car of hay or the proceeds. At that date Freeman's account stood over-drawn $68.23, and this entry of the credit made the same stand $20.32 in favor of Freeman. On August 8, 1910, the draft was returned unpaid, and the bank, at Freeman's request, charged the amount back to him and delivered the draft and bill of lading to him. The bank then on August 11, 1910, charged Freeman's account with $1.90 as interest on his overdraft of $68.23 appearing on July 15th, when the credit for the amount of the returned draft was given. Shortly prior to July 18, 1910, the appellee, who was shipping hay from a point in Oklahoma, employed Freeman to sell his hay on a commission of $3 per car. Freeman was to find the purchaser, make the sale, direct the shipping, and collect the price. Freeman contracted six cars of the hay to W. T. Wilson Grain Company of Nacogdoches, Tex. On July 18th and on July 25th and on August 2d Freeman made out drafts on the Wilson Grain Company, payable to the order of appellant, for the price of each car of hay on those dates respectively shipped, and delivered the same to appellant, and took credit on his passbook for the same less the cost of exchange charged him. These drafts were paid in due course of business by the Wilson Grain Company on August 8th, August 10th, and September 2d. These drafts were accepted by the bank in the usual course of business for transmission and collection for Freeman, but the appellant permitted Freeman to check against the proceeds thereof as soon as he took credit on the books, subject to the claimed right of appellant to refuse payment of his checks when the condition of the account in its judgment justified such refusal. On several dates, but after July 18th, in July and August, and on September 2d, Freeman made deposits of money, but these deposits were in addition to the drafts for the six cars of hay and checked against by Freeman. On September 6th the appellant balanced the passbook of Freeman, and there was but a small balance to his credit. Appellee brought suit against the bank, claiming that it had converted the proceeds of his six cars of hay. The trial was to the court, and judgment for appellee for $90.45.

J. G. McGrady and Mark McMahon, for appellant. E. L. Agnew, for appellee.

LEVY, J. (after stating the facts as above). The court made the finding, which is fully supported by the evidence, that the bank had no notice that appellee or any other than Freeman himself owned or had any

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

interest in the six cars of hay or the proceeds of the sale deposited in the bank until after September 2d. The account and passbook were balanced on September 6th. It was upon this finding, and the further fact that the deposit of the proceeds of the sale of the hay in the bank by Freeman in his name was not without actual authority from appellee, that the court declined to hold the bank responsible to appellee to such amounts as were merely paid out on Freeman's checks. But upon the further finding that when the bank charged back on August 8th the item of $88.55 for the returned draft of July 15th, and on August 11th the item of $1.90 as interest on the overdraft account prior to July 18th, it resulted in paying Freeman's own debt to it out of money belonging to appellee for his six cars of hay, the court concluded that such act of the bank constituted participation in an actual misappropriation of the funds by Freeman, and it was therefore liable in conversion for such amounts. It is this latter conclusion of the court that is challenged by the four assignments of error first presented. If the finding in the record by the court of what the facts are surrounding the two debits mentioned is correct, and the testimony conclusively so shows, then the only proper conclusion of fact to be made therefrom is that Freeman consented that the bank make the same against him. Thus in the record it does not appear that the bank is arbitrarily withholding such amount against Freeman's consent. So 'with this fact being clear, and bearing in mind the court's finding that the bank at the time had no notice that appellee or any one besides Freeman himself had any interest in the hay or proceeds of sale deposited by Freeman in his own name in the bank, we are of the opinion that the court erred in holding appellant liable to appellee for the two items for which judgment was entered.

[1] It is the established doctrine that a depositor, although holding money in a fiduciary capacity, may draw it out of the bank ad libitum, and the bank incurs no liability in merely honoring the check drawn by him. Coleman v. Bank, 94 Tex. 607, 63 S. W. 867, 86 Am. St. Rep. 871.

[2] But it should also be said to be the rule, we think, that a bank stands as any other person when seeking to acquire an interest or benefit from a fund held in trust by a depositor, if it have notice that the depositor is an agent or trustee, and, so knowing, aids the trustee or agent in diverting trust funds from the beneficiary. Bank v. Jones, 18 Tex. 811; Bank v. Claxton, 97 Tex. 576, 80 S. W. 604, 65 L. R. A. 820, 104 Am. St. Rep. 885.

[3] The rules applicable to conversion of specific property cannot be made applicable to this character of case. Here, when Freeman made a general deposit of the funds in his own name, the relation of debtor and creditor was simply created between him and the bank. It is true that it could be said that Freeman as the agent or trustee has by the application to his own debt of the funds belonging to the beneficiary breached his trust, and is liable to the beneficiary for such amount. But it is not enough in order to hold the bank a wrongdoer to the beneficiary by accepting to the offsetting of the debt due by the agent out of the general funds in the name of the agent or trustee that the agent himself was committing a breach of his trust. Clearly we think, under the rules of law prescribed by the authorities mentioned, the proof must also show that the bank had knowledge at the time of the agency of the depositor, and, so knowing, participated with him in the breach of the trust, before it could be said that the bank by the act of offsetting the debt by the entry of debit was fraudulently or illegally participating with or aiding the agent or trustee in diverting the payment of the funds from the beneficiary; for, having notice of the rights of the beneficiary, then the wrong the bank would be doing the beneficiary would consist in and depend upon the act of joining with or aiding the agent in misapplying or diverting his funds; so, if notice on the part of the bank of agency in the depositor is wanting, then the basic element underlying the principle of law rendering liable those who participate in or agree to commit a wrong is absent.

[4] Appellee files cross-assignments complaining of. the refusal of the court to find that certain specific facts were established by the evidence. The court made full findings of fact, and omitted none, but refused appellee's request as made. It is within the province of the trial court to determine from all the evidence what facts are and are not established. And we have also treated the assignments as attacking the court's findings as being contrary to the evidence, and think they should be overruled.

Reversed and rendered.