W. R. MILLER & CO. v. HOBDY et al.

(Court of Civil Appeals of Texas. Austin. Jan. 15, 1913. On Motion for Rehearing, June 25, 1913.)

1. PRINCIPAL AND AGENT (§ 170*)—AUTHORITY OF AGENT—RIGHTS OF THIRD PERSONS—RATIFICATION.

Where a principal, who has expressly limited the authority of his agent, fails to object to an entirely different course of business, he must be deemed to have ratified the course of business.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 638–643; Dec. Dig. § 170.*]

2. BANKS AND BANKING (§ 130*)—DEPOSITS—AUTHORITY OF AGENT.

A bank, which knew that the authority of an agent to draw checks in the name of the principal was limited to the drawing of checks for spot cotton, could not justify the payment of checks drawn by the agent for cotton futures, where it knew that fact at the time the checks were drawn and paid, or had knowledge of facts as would put it on notice that the checks were drawn in payment of cotton futures, and the principal to hold the bank liable for such payments need not show that the bank received benefits from the misapplication, but need only show that the bank, chargeable with notice of the facts, honored the checks, thereby aiding the agent in misappropriating the funds.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 319–325, 327; Dec. Dig. § 130.*]

3. BANKS AND BANKING (§ 130*)—DEPOSITS—AUTHORITY OF AGENT.

Where a bank, knowing that an agent had authority only to draw checks in the name of his principal for spot cotton, honored checks drawn by the agent payable to the manager of a concern conducting a bucket shop, and the bank knew the business of the concern and credited the amounts of the checks honored to the account of the concern, it was liable to the principal for the misappropriation of his funds.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 319–325, 327; Dec. Dig. § 130.*]

On Motion for Rehearing.

4. APPEAL AND ERROR (§ 1175*)—DISPOSITION OF CASE ON APPEAL—REMAND.

Where the evidence greatly preponderates against the judgment, but there are facts tending to support the findings, the Court of Civil Appeals cannot reverse the judgment and render judgment for the defeated party, but must reverse and remand the case.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Key, C. J., dissenting in part.

Appeal from District Court, Brown County; John W. Goodwin, Judge.

Action by W. R. Miller & Co. against R. L. Hobdy and another. From a judgment granting insufficient relief, plaintiff appeals. Reversed and remanded.

Snodgrass & Dibrell, of Coleman, and A. L. Curtis, of Belton, for appellant. Goodson & Goodson, of Comanche, for appellees.

RICE, J. This suit was instituted by W. R. Miller & Co., appellants, as plaintiffs below, against R. L. Hobdy and the First National Bank of Comanche, Tex., for the recovery of, certain sums of money belonging to them claimed to have been converted by appellees, by means of certain checks unlawfully drawn by Hobdy in the name of Miller & Co. on said First National Bank. There was a trial before the court without a jury, resulting in a judgment in favor of plaintiffs against Hobdy in the sum of $8,111.75, less the sum of $413.51, for which judgment was rendered against said First National Bank, from which judgment appellants have appealed.

The only question involved in this appeal is as to the correctness of the judgment rendered in appellants' favor against the First National Bank. It is contended on the part of appellants that they were entitled to judgment against said bank for the sum of $5,750.50, which was the total amount of checks claimed to have been unlawfully drawn during the month of October, 1905, by Hobdy against them, through said First National Bank, which had been paid by said bank with their funds on deposit therein.

The facts, briefly summarized, disclose: That appellants were a partnership composed of W. R. Miller and B. A. Ludlow, who during the years 1903, 1904, and 1905 were engaged in the business of buying spot cotton at various points; their home office being Brownwood, Tex. That Ludlow was the active member of said firm, having charge of the business thereof, residing at Brownwood. That plaintiffs employed R. L. Hobdy during the years 1904 and 1905 to purchase spot cotton for said firm; his duties being those of a "take-up man," whose express authority was to purchase spot cotton f. o. b. cars, and to pay for same by draft on them with bill of lading attached. That plaintiffs were not engaged in buying or selling cotton futures, and said Hobdy had no authority from them to buy or sell cotton futures, and no authority from them to draw checks or drafts against said firm or its ac-

count for account of cotton future deals of any character whatever, nor had he ever done so, prior to the drawing of the checks in question. That said Hobdy, with authority above stated, was engaged in buying cotton for plaintiffs at Comanche during the years 1904 and 1905, and bought various and sundry lots of cotton at that place for them. That he made arrangements with said First National Bank, by which said bank opened up an account in the name of plaintiffs, permitting Hobdy to draw checks on them in their name, per himself on said bank in payment of cotton purchased by him for plaintiffs. That, when sufficient cotton had been purchased in this manner to constitute a shipment, he would then draw on plaintiffs in favor of said bank with bill of lading attached for the amount of such cotton. That plaintiffs knew of the arrangement thus made with the bank, and knew how Hobdy was buying and paying for the cotton purchased by him for them, making no objection thereto, and never at any time informing the bank that he had no authority to make such arrangements and pay for cotton by checks on it in the name of plaintiffs. That said bank did not know of the limitation thus placed by plaintiffs on Hobdy's authority, and supposed that in opening the account with said bank in the name of plaintiffs, and drawing checks in said firm's name to pay for cotton actually purchased, he was acting within the scope of his authority. That in 1905 R. Beamer, as agent, conducted a "bucket shop" in Comanche, under the name of the Comanche Cotton Exchange. That Beamer attended to all the business of said exchange, which was the buying and selling of cotton futures, which exchange belonged to Cellar of St. Louis, and Beamer, as his agent, deposited all cash and checks belonging to said exchange that came to him as its agent in the First National Bank of Comanche, Tex., and said bank remitted, when requested by Beamer, all such moneys to the Bank of Commerce at St. Louis, for Cellar; this being usually done at the close of each day's business. That said bank and its officers knew of the business conducted by said exchange, and knew that Beamer was conducting said business as its agent. The account of the Comanche Cotton Exchange with said bank was kept in the name of the Comanche Cotton Exchange, and, when remittances were made to Cellar, said Beamer would draw against this account in favor of the First National Bank, and said bank would then wire the remittances to the St. Louis Bank for Cellar. That Hobdy, during 1905, at Comanche bought and sold cotton futures through the Comanche Cotton Exchange, transacting the business with R. Beamer. These future transactions were conducted by Hobdy in his own name, and were unknown to plaintiffs. On October 5th, 1905, Hobdy drew a check for $700, and on the 6th of October, 1905, Hobdy

drew a check for $500, another October 12th for $1,250, another October 13th for $1,000, another October 14th for $1,000, and another October 16th for $1,000, each of which were drawn on the First National Bank of Comanche in favor of said Beamer, and each signed by Miller & Co., per H., and each of said checks were forthwith deposited by R. Beamer in the First National Bank to the credit of the Comanche Cotton Exchange, and each of them were given by Hobdy in settlement and adjustment of his individual and personal cotton future transactions with said cotton exchange; said Miller & Co. having no connection with said transactions or any knowledge thereof. On the 16th of October, 1905, said Hobdy drew a check in his own favor on said First National Bank for $300, signing the name of Miller & Co. to said check, by Hobdy, the proceeds of which were applied by the First National Bank to the payment of an individual indebtedness of Hobdy to said bank, which last transaction forms the basis of the judgment rendered against the bank in behalf of appellants. Said bank paid all the checks above enumerated out of the funds of W. R. Miller & Co. then on deposit in said bank, which were sufficient for said purpose.

[1] We do not think the First National Bank was in any way affected by the express authority given to Hobdy limiting him only to the purchase and payment of cotton by draft drawn on Miller & Co. with bill of lading attached, because it appears that by subsequent dealings with said Hobdy an entirely different course of business was transacted, of which appellants had knowledge; and, failing to object thereto, must be held to have ratified such course of dealing.

[2] But it clearly appears from the evidence that said bank knew that Hobdy's agency was for the purpose of buying spot cotton, and was limited by his course of dealing with them to the drawing of drafts in the name of Miller & Co. in payment therefor. So that they were not, by reason of these facts, justified in the payment of any checks drawn by Hobdy on Miller & Co., in payment for cotton futures. But it is contended by said bank that, unless it had actual knowledge of the fact that the checks above set out were drawn by him in payment for cotton futures, then they are absolved from liability to appellants. We think it is immaterial as to whether they had affirmative knowledge of this fact or not, provided it is made to appear that at the time said checks were drawn and paid they had knowledge of such facts and circumstances as would put them upon notice that such checks were drawn in payment of cotton futures, because, if they were charged with such notice by reason of such facts, then payment by them of such checks would be such a diversion of the funds of Miller & Co. as would subject them to liability.

[3] Now, are there such facts and circum-

stances in this record? We think there are. First, it appears that Beamer succeeded one Gowan in the management of this cotton exchange, which was located on the ground floor just across the square from appellee's bank, was openly conducted during the fall of 1904 and 1905, and liberally patronized by the public, and that Gowan had fully explained the nature and scope of the business to the bank. At the time that Beamer took charge of this cotton exchange, it appeared that he was introduced to the officers of said bank, who opened an account with the cotton exchange, with a knowledge of the fact that its only business was that of selling cotton futures. Its officers knew that Beamer had no other business than that of conducting said cotton exchange; and immediately upon presentation by Beamer of each of said checks they turned to the books and credited the amounts thereof to the account of said cotton exchange, and thereafter either remitted to Cellar & Co., as per their arrangement heretofore indicated, or paid the same out to various persons who were dealers with said exchange.

These facts were sufficient, we think, to charge the bank with the knowledge that said checks were not drawn by Hobdy in payment for spot cotton; and were sufficient, in our judgment, to put them upon notice that they were given in payment for cotton futures; and the bank in so honoring said checks, and at once crediting the proceeds thereof to the account of the cotton exchange, must be held liable. See Commercial & Agricultural Bank v. Jones, 18 Tex. 811; U. S. Fidelity & Guaranty Co. v. Adoue & Lobit (Sup.) 137 S. W. 648, 37 L. R. A. (N. S.) 409; Id. (Sup.) 138 S. W. 383 (on rehearing); First State Bank of Bonham v. Hill, 141 S. W. 300; Interstate Nat. Bank v. Claxton, 97 Tex. 569, 80 S. W. 604, 65 L. R. A. 820, 104 Am. St. Rep. 885; City Nat. Bank v. Martin, 70 Tex. 643, 8 S. W. 507, 8 Am. St. Rep. 632.

In the case of Bank v. Jones, supra, it was said: "It cannot be doubted that Dye had authority to deposit this money in bank on account of plaintiffs; if not conferred in express terms, at least impliedly from the nature of the transaction. It was intended by the plaintiffs that it should be so deposited. That was the purpose for which it was consigned to Dye. He was but the instrument of the plaintiffs used by them for the purpose of employing in their behalf the agency of the bank. There was therefore a privity between the bank and the plaintiffs, and the bank became directly and immediately responsible to the plaintiffs, and not merely to the agent employed by the plaintiffs in making the deposit. Being so responsible, there can be no clearer proposition than that they had no right to pass the deposit to the private account of Dye. Whenever they did so, they were guilty of a fraudulent conversion of the money of the plaintiffs, because they knew that the money was not Dye's, but the plain-

tiffs', and that he had no authority or right to have it passed to his private account."

It is ordinarily true that, where an agent has authority to draw checks on a bank in the name of his principal during the regular course of its business, it cannot be held responsible for honoring the check drawn by said agent in payment of his own obligation, unless it had notice of facts or circumstances that would apprise it of the purpose for which said check was so unlawfully drawn. Yet, if there are such facts and circumstances that would put it upon notice of the unlawful purpose for which said check is drawn, it should be held responsible. In 5 Cyc. 530, subd. O, it is said: "A bank cannot knowingly permit an agent or trustee to use trust money to discharge his individual indebtedness to others, and ought to refuse to honor his check for diverting trust money to pay other creditors. Nor should it permit him to transfer trust money to his own account, for this is often a fatal step to its use for an individual purpose."

Certainly the agent must act in good faith towards the principal. If there are any circumstances surrounding the transaction that would visit the bank with the knowledge that the agent is misappropriating the funds of his principal, it would be the duty of the bank to refuse payment of such check. It is not necessary that the bank, as appellee contends, in order to be liable must necessarily have received benefit from such misapplication of the funds by the agent. Duckett v. National Bank, 86 Md. 400, 38 Atl. 983, 39 L. R. A. 84, 63 Am. St. Rep. 513; Leake v. Watson, 58 Conn. 332, 20 Atl. 343, 8 L. R. A. 666, 18 Am. St. Rep. 270. But its liability is apparent if, with a knowledge of facts that would charge it with notice of the misappropriation by the agent, it honors the check, or aids the agent in so misappropriating the funds of his principal, as was done in the instant case.

In National Bank v. Claxton, supra, Mr. Justice Williams, among other things, says: "Other cases to be distinguished are those in which a principal is the depositor and occupies a contractual relation to the bank, but an agent is given authority to draw his checks against the deposit for the benefit of the principal or of his business. In such cases the bank is not authorized to pay checks drawn by the agent for his own benefit if it knows, or, it is sometimes said, if it have good reason to know, the fact. It is mainly from expressions in opinions discussing these two classes of cases that the courts below reached the conclusion that it was the duty of the bank to avail itself of the means it had of knowing of the misappropriation of defendant's money by his agents."

Here the deposit was in the name of the principal. The bank knew, from its long course of dealing, that the agent had authority to draw against the principal in payment

for actual spot cotton; from which it must be inferred that it knew he had no other authority. Yet, with this knowledge, the bank honors a check drawn by said agent against his principal, payable to a man whom the facts show never owned or sold a bale of spot cotton, and whose only business, within their knowledge, was that of a dealer in cotton futures; and immediately, on presentation of the check, transfers on its books the amount represented thereby to the credit of this cotton future exchange, another of its customers. What stronger circumstances than this could there be to visit them with a knowledge of the fact that the agent was transcending his authority and misappropriating the funds of his principal? We think, under all the circumstances, it was immaterial whether or not they actually knew that Hobdy was dealing in futures. These circumstances were sufficient to put them upon notice that said agent was so dealing, and that the giving of such checks was outside of his authority.

So believing, we hold that the lower court erred in holding that the bank was only liable to appellants for the amount of the $300 check drawn by Hobdy in his own behalf, and paid by it out of the funds of appellants; for which reason it becomes our duty to reverse and render the judgment in favor of appellants against said bank for the sum of $5,750, with 6 per cent. interest from the 16th of October, 1905, and it is accordingly so ordered; but the judgment below heretofore rendered against Hobdy in behalf of appellants is, in all things, affirmed.

Affirmed in part and in part reversed and rendered.

### On Motion for Rehearing.

[4] After a full consideration of appellees' motion for rehearing, we have concluded the same should be granted to the extent of reversing and remanding the case, instead of reversing and rendering, as heretofore ordered. We think the evidence greatly preponderates against the judgment as rendered in favor of appellees; but, while this is true, we are not prepared to say but that there were facts and circumstances in evidence which tend to support the finding of the court. This being true, under the holding in Irving v. Freeman (Sup.) 155 S. W. 931, and other cases there cited, we deem it our duty to reverse and remand the case, and it is so ordered.

Motion granted. Reversed and remanded.

KEY, C. J. (dissenting). I concur in granting a rehearing in this case, but have heretofore thought, and still think, that the judgment ought to be affirmed.

The trial court found as a fact that the bank had no knowledge that the checks were given by Hobdy in settlement of transactions in cotton futures or of his individual indebtedness to the cotton exchange; and, in my opinion, the testimony sustains that finding, and therefore this court ought to affirm the judgment.