[Civil No. 2568.   Filed May 3, 1927.]

[255 Pac. 595.]

FRANK H. HEREFORD, Appellant, v. THE CONSOLIDATED NATIONAL BANK OF TUCSON, a Corporation, Appellee.

Mr. Frank H. Hereford, Mr. Ben C. Hill and Mr. E. T. Cusick, for Appellant.

Messrs. Mathews & Bilby, for Appellee.

ROSS, C. J.—This action is between the Consolidated National Bank of Tucson, as plaintiff, and Frank H. Hereford, as defendant, and arises out of a business transaction that took place while Hereford was a stockholder and a director of the bank.

In October, 1921, a national bank examiner determined that notes and securities, to the amount of $87,120, carried on the books of the bank, were "undesirable," and demanded of the officers of the bank that such notes and securities be charged off as assets and replaced with cash or live assets. On November 1st, at a special meeting of the board of directors, the demand of the bank examiner was taken up and considered, and a letter was written to the Comptroller of the Currency stating, among other things:

" . . . The board of directors, representing 484 shares of the stock of the bank, agree to pay at once a voluntary assessment on their stock of 180 per cent, thereby creating a fund of $87,120, and for this sum to purchase from the bank the following assets, considered by the examiner as undesirable, and, in addition, all other assets which have been charged off the books. . . . This fund will be paid into the bank in cash."

This letter was signed by the following nine directors: Albert Steinfeld, Andrew P. Martin, Nathan Kendall, Leo Goldschmidt, R. E. Butler, C. H. Bayless, Frank H. Hereford, Harold Steinfeld and Charles E. Walker.

On December 12th the directors caused to be entered on their minutes, as evidence of the respective interests that each of them acquired in the notes

and securities taken over by them, and the manner in which such paper should be handled and controlled, the following:

"That the bank sell to each of the contributors an interest in the notes and securities proportionate to the amount he pays in. The contributors agree that it shall be held and disposed of as a majority of them in number, and not interest, shall from time to time agree upon, and the contributors agree *to* the bank that, when the stockholders of the bank shall have repaid to the contributors the full sum contributed by each, they will surrender their interest in the above referred to notes and securities."

At a meeting of the stockholders, held January 10, 1922, the action of the board of directors in caring for the doubtful securities was ratified, and instructions or directions were given to the bank's officers to transfer and assign all such notes and securities to the directors who paid into the bank the said $87,120. This sum was made up by the directors, each contributing in proportion to the number of shares of stock he owned in plaintiff bank. Hereford contributed on that basis $3,600, which was paid by him with his promissory note for that amount, dated December 13, 1921, payable in six months after date. The note sued on, dated June 13, 1922, is a renewal of the original note and interest.

The complaint is in the ordinary form on a promissory note, and alleges as the consideration for the note the principal sum of $3,708. The answer, besides a general denial, alleges the note was given as part of the purchase price of the undesirable notes and securities consisting of "promissory notes, drafts, overdrafts, documents, and accounts" owned by the plaintiff bank. It alleges that plaintiff did not perform its part of the contract of sale by transferring and assigning or delivering said notes, drafts, overdrafts, documents or accounts to defendant and his

associates, but that, in the year 1925, did, for a valuable consideration, sell, assign and deliver such paper to Albert Steinfeld, without defendant's knowledge or consent, who thereby became the owner of such paper; that, during the time before the sale to Steinfeld, and after the agreement to sell said paper to defendant and associates, the plaintiff owned, held and treated such paper as its own, and collected money thereon, and applied it to its own purposes and business, without the consent and against the protest of defendant; that by reason of the premises plaintiff obtained the said note unlawfully, fraudulently and without consideration; that he frequently requested the plaintiff to carry out the contract or return to him his note; and that the plaintiff had failed to do either. He asked that note be ordered surrendered for cancellation and that plaintiff take nothing.

The plaintiff in its reply denies that note was given by reason of the agreement set out in the answer, but alleges it was given "in payment of a voluntary assessment levied by the directors of plaintiff . . . upon the capital stock of plaintiff," then owned by defendant, "and in pursuance to the demand of the Comptroller of the Currency of the United States." The reply admits plaintiff agreed, after defendant's note was executed, to deliver to defendant and his associates the paper described in the answer, and alleges that it did deliver the same to defendant and his associates, and that the same was thereafter "disposed of by defendant and his associates in accordance with defendant's acquiescence and agreement in relation thereto."

Upon the issues thus formed, the case was tried to the court without a jury. The court made written findings of fact and conclusions of law, and upon such findings of fact and conclusions of law entered

judgment in favor of the plaintiff for the full amount of the note.

The defendant filed a motion for a new trial, and, the same being overruled by operation of law, he has appealed therefrom and from the judgment.

Defendant has made numerous assignments of error. We will consider only a few of his main contentions, as we find from an examination of the record it is not necessary to discuss all the points raised. He contends, in the first place, that the judgment is not within the pleadings, and for that reason should be set aside and vacated. This is so, it is said, because, when plaintiff in its reply alleged that the consideration of the note was ''a voluntary assessment levied by the then directors of plaintiff . . . upon the capital stock of plaintiff then owned'' by defendant, the action became one for the enforcement of such voluntary assessment, and the right of recovery depended upon the sufficiency of such consideration. That, if such consideration was void, plaintiff could not have judgment on its pleadings nor upon the contract set up in the answer, because plaintiff denied that it ever made or entered into any such contract.

The court made no finding one way or the other as to plaintiff's contention that the consideration of note was a voluntary stock assessment made by the directors of plaintiff, and the failure to make such findings, we take it, is a negation of plaintiff's contention thereon. If, however, that was the consideration for defendant's note, under the law it was void, as the power under the federal statute to make stock assessments for the purpose of replenishing a national bank's assets, and to aid it to carry on, is lodged solely in the stockholders. An assessment for such purpose made by the directors and without action by the stockholders is void. *Commercial National Bank* v. *Weinhard,* 192 U. S. 243, 48

L. Ed. 425, 24 Sup. Ct. Rep. 253 (see, also, Rose's U. S. Notes).

However, the issue in the trial of the cause was whether the contract alleged in defendant's answer was made, and, if so, whether plaintiff performed its part of such contract by transferring, assigning and delivering the undesirable paper to defendant and his associates, or whether by a course of conduct in relation thereto defendant and his associates became the owners thereof. And, since we are satisfied that the matter can be finally disposed of on that issue and the court's findings thereon, we do not feel that we should reverse and remand for further proceedings simply because the judgment is not supported by the pleadings, especially since we have come to the conclusion that plaintiff is not entitled to judgment in any view of the case.

The court found that defendant's note was given in consideration of an agreement on the part of plaintiff to sell, assign and transfer to defendant and his associates certain promissory notes, contracts, securities and interest in real estate of the book value of $87,120; that said notes, etc., were never actually physically removed from the vaults of the bank, but were charged off the books, and all collections made upon notes and securities were carried in an open account called "the Directors' Trust Fund"; that the directors, as individuals, who were the *owners* of this fund, had no meeting to decide upon any particular course with reference to its disposition, but by their actions they all, except Hereford, ratified the action of the officers of the bank and everything that was done towards the control and disposition of the fund; that some of the securities were converted by the officers of the bank and transferred back to the bank; that in 1924, and long after the defendant had ceased to be a member of the board of directors of plaintiff.

the national bank examiner required other notes and securities of said bank, carried at the book value of $200,000, to be removed, and that, in consideration of an advance to plaintiff bank by Albert Steinfeld of $200,000 to cover said paper, the original directors and associates of defendant, without defendant's knowledge or consent, transferred, sold and delivered the notes and securities representing the $200,000, together with the notes and securities sold to defendant and his associates, and "the Directors' Trust Fund," to Albert Steinfeld; that, included in said sale and delivery to Steinfeld, was $2,479 of the note sued on, leaving the plaintiff interested in said note to the extent of $1,229 and interest thereon.

It was found that, at the time defendant gave the note to plaintiff, it was agreed by defendant and his associates that the notes, contracts, securities, interest in real estate, etc., "should be controlled by a majority in number of said directors who purchased same, and that the plaintiff bank might act as a collection agent in handling notes, etc., and that, when the same were collected or realized upon, any overplus, if any, should be paid over to plaintiff."

From the foregoing facts, the legal conclusion was drawn that the agreement of defendant and his associates, that a majority of their number might control the disposition of the property purchased by them from plaintiff, authorized defendant's associates, without defendant's consent or knowledge, to turn over such property to Steinfeld and plaintiff bank in the proportions of $2,479 and $1,229, and that, though such act was a dissipation of the fund, or a giving it away, a majority of their number had the power to do that under the agreement, and that defendant's remedy was against Steinfeld or his associates individually; that he had "no defense to an action by the plaintiff upon the promissory note."

We observe that there is no innocent third party and no holder in due course of negotiable paper to be protected in this case. The defendant's associate directors acted for the bank and their knowledge was its. It is in the same situation legally and factually as the directors. It therefore knew that it had parted, for a valuable consideration, with the title and ownership of $87,120 worth of undesirable paper, and that defendant and his associates had paid the consideration therefor and become the owners thereof; that it could not lawfully hold or convert such property and also the consideration paid therefor. In other words, it could not have its cake and eat it too.

We think it was implicit in the agreement, as to the control and disposition of such property, that such control and disposition should be for the purpose of converting into money, or the equivalent of money, such property, to be applied in reimbursing defendant and his associates their advances, and that it was not within the contemplation of anyone that a majority of such directors could dissipate or give away such paper, as was done; that such disposition, as to any nonconsenting party to the agreement, was ineffectual. It amounted to conversion of defendant's interest in said paper, not only by the directors, but also by the bank for which the directors were acting.

Whether defendant's interest in such property was sufficient to discharge his note in full, we are not able to say. The record discloses that the bank had, long before the transfer to Steinfeld, realized the face value of some of the paper, and had collected over and above expenses more than $30,000 and credited it to ''the Directors' Trust Fund.'' It also discloses that the officers of the bank had actually indorsed payment on defendant's note of $2,479.

Since the bank has wrongfully converted to its own use paper belonging to defendant of a face value aggregating or exceeding the face value of defendant's note, and since the property converted was the consideration for the note, we think it just to regard and treat the notes and other securities converted as being of the actual value of their face. *Prima facie,* that is the rule. 26 R. C. L. 1150, § 65.

Plaintiff admitted in its reply that the defendant and his associates had delivered to it notes and securities of the face value of $87,120, and the court found upon unquestioned evidence that plaintiff sold such paper to defendant and his associates. When the issues were being formed, it was the duty of plaintiff, if it regarded the paper that it appropriated to be of less value than its face, to have made the value an issue. Failing to do that, it should be charged with the face value of the choses it converted, or the *prima facie* value thereof.

We think defendant made out his case on either of two grounds, payment or failure of consideration, and that the judgment should have been that plaintiff surrender to defendant his note for cancellation and recover his costs.

The judgment is therefore reversed and the case remanded, with directions that judgment be entered in accordance with this opinion.

LOCKWOOD and McALISTER, JJ., concur.